

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2006

# Yulianty v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Yulianty v. Atty Gen USA" (2006). *2006 Decisions.* Paper 427.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/427

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3398
_____

HELEN YULIANTY,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A95 473 719)
Immigration Judge Miriam K. Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2006

Before: FUENTES, FISHER and McKAY,* *Circuit Judges.*

(Filed September 21, 2006)
_____

OPINION OF THE COURT
_____

---

*The Honorable Monroe G. McKay, United States Circuit Judge for the Tenth Circuit, sitting by designation.

FISHER, *Circuit Judge*.

We write only for the parties and thus will forgo lengthy recitation of the factual and legal background to this case. Helen Yulianty petitions for review of the BIA's denial of her application for asylum and withholding of removal under the Immigration and Nationality Act and the Convention Against Torture. The BIA affirmed the opinion of the immigration judge (IJ), Miriam Mills. We review the BIA's opinion.[1]

To qualify for asylum, an applicant must demonstrate a well-founded fear that if returned to her home country she will be persecuted on account of one of the five grounds enumerated at 8 U.S.C. § 1101(a)(42)(A). The grounds alleged here are national origin and religion. Because the standard for withholding of removal is more stringent than for asylum eligibility, if a petitioner fails to meet the criteria for asylum, she necessarily fails to meet the criteria for withholding of removal. *Wang v. Gonzales*, 405 F.3d 134, 144 (3d Cir. 2005).

The IJ denied Yulianty's application on two alternative grounds: first, that her story was not credible; second, that she would fail to meet the statutory asylum eligibility standard even if her story were true. The BIA affirmed on the latter ground, as will we.

Assuming Yulianty's story is true, she is an Indonesian citizen of ethnic Chinese descent. She was born and raised a Buddhist, and later attended Christian churches and a Christian college in Indonesia. She experienced several incidents of harassment and

_____

[1]To the extent that the BIA's opinion adopts or defers to the IJ's opinion, we also review the IJ's opinion. *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005).

crime: on various occasions she heard ethnic slurs shouted at her on the streets; on at least one occasion rocks were thrown at her house; during street riots in 1998, there was an attempted break-in of her house; on one occasion a boy riding a bike "grabbed [her] breasts" while riding by her on the street; on another occasion her purse was snatched by a thief riding a motorcycle.

"Persecution" means "extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom. This definition does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003) (internal citations omitted). Further, the acts must be carried out by the government, or by forces that the government either will not or cannot control. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

We agree with the BIA that the incidents described by Yulianty do not rise to the level of persecution as we have defined that term. The two incidents of street crime bear no evident connection to ethnicity or religion, nor does Yulianty allege that the government was responsible for the incidents or is incapable of protecting her from threats or violence. She reported the purse-snatching to the police, who took her report in writing. Yulianty presented no evidence that ethnicity or religion played any role in the crime or the government's response. Nor do the State Department Country reports substantiate the suggestion that the Indonesian police are unwilling or unable to

3

investigate crimes against ethnic Chinese. What we said in *Lie v. Ashcroft* applies equally

to the record before us in this case:

> [T]he evidence in the record does not establish that there is a pattern or practice of persecution of Chinese Christians in Indonesia. The INA regulations do not define what country conditions constitute a "pattern or practice of persecution," and this court has yet to provide further clarification of the standard. At the threshold, we agree with other courts that have held that, to constitute a "pattern or practice," the persecution of the group must be "systemic, pervasive, or organized." *Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004); *see also Woldemeskel v. INS*, 257 F.3d 1185, 1191 (10th Cir. 2001). At all events, as with any claim of persecution, violence or other harm perpetrated by civilians against the petitioner's group does not constitute persecution unless such acts are "committed by the government or forces the government is either 'unable or unwilling' to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003); *see also Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 2005 WL 14754, *3 (3rd Cir. 2005).
>
> Petitioners argue, with some force, that anti-Chinese violence persists, citing evidence in the record of widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians. Nevertheless, such violence does not appear to be sufficiently widespread as to constitute a pattern or practice. The 1999 Country Report on Indonesia indicated that there was a sharp decline in violence against Chinese Christians following the period of intense violence in 1998, and noted that the Indonesian government officially promotes religious and ethnic tolerance. Moreover, this violence seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence. Given these considerations, we are not compelled to find that such attacks constitute a pattern or practice of persecution against Chinese Christians.

*Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).

The facts alleged in this case are far less extreme and threatening than those

alleged in *Lie*, *see id.* at 533, and the record does not include any evidence that social

conditions or government practices have changed sufficiently in the past year as to cast doubt on our holding in *Lie*. Accordingly, the petition for review will be denied.