

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2005

# Oktavia v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4536

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Oktavia v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1444.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1444

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4536

EVI  OKTAVIA,
Petitioner

v.

ALBERTO GONZALES,* ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

PETITION FOR REVIEW FROM THE ORDER
AND JUDGMENT OF THE BOARD OF IMMIGRATION APPEALS
Agency No. A79 302-395

Submitted Under Third Circuit LAR 34.1(a)
February 7, 2005

Before: BARRY, FUENTES, and BECKER, <u>Circuit Judges</u>

(Opinion Filed: March 17, 2005)

OPINION

---

*Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case.  Fed. R. App. P. 43(c).

BARRY, <u>Circuit Judge</u>

Evi Oktavia ("Oktavia") petitions for review of a decision by the Board of Immigration Appeals ("BIA"). The BIA dismissed her appeal, adopting and affirming the decision of the Immigration Judge ("IJ"), with two "corrections." For the reasons discussed below, we will deny the petition for review.

**I.**

We write exclusively for the benefit of the parties and will only recount those matters relevant to the issues before us. Oktavia is a native and citizen of Indonesia who entered the United States on or about December 7, 1999 as a non-immigrant visitor with authority to remain until June 6, 2000. On April 16, 2001, the then-Immigration and Naturalization Service ("INS") executed a Notice to Appear ("NTA") charging Oktavia as an alien who remained in the United States for a time longer than permitted under 8 U.S.C. § 1227(a)(1)(B). At a hearing before the IJ, Oktavia admitted the factual allegations contained in the NTA and conceded removability. The IJ designated Indonesia as the country to which she would be removed.

Meanwhile, on February 14, 2001, Oktavia had applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). During the hearing before the IJ, Oktavia testified that she is an Indonesian of Chinese heritage and is a Buddhist.[1] She testified that living in Indonesia was difficult. As a child, she was

---

[1] In her brief to us, Oktavia states that she is a Christian. Pet. Brief at 2.

mistreated by other students because she was ethnic Chinese and Buddhist.  Some

Indonesian children would ask her and other ethnic Chinese students for money because

the Indonesian children did not like them.  Additionally, she claimed that sometimes

Indonesian teachers would ask questions but not let the ethnic Chinese students answer.

This alleged mistreatment extended beyond her childhood. Oktavia testified that,

as an adult, she was violently attacked on three occasions.  In December of 1995,

Indonesian men approached her car, which was stopped at a red light.  The men

threatened her with a knife, broke her car windows, stole property inside her car, and cut

her arm with the knife. The men also told her that she should go back to her own country.

When the light turned green, Oktavia sped away. She did not report this crime to the

police.  Three years later, Oktavia was dragged from her car during a riot. She fled the

scene, but the rioters chased after her, raped her, and burned her car.  She passed out and

awoke in a hospital, but, again, did not report the incident to the police.  A third attack

occurred three months later. Oktavia and her fiancee were riding together on a

motorcycle.  Four men approached the couple and kicked her fiancee off the motorcycle.

He fell to the ground, hit his head on the pavement, and was rendered unconscious.

Oktavia took him to the hospital and reported the assault to the police.

The IJ considered Oktavia's testimony, the affidavits, and the State Department's

2000 "Country Report on Human Rights Practices: Indonesia" which concludes, *inter*

*alia,* that: the Indonesian government "embraces" Buddhism; the Indonesian Constitution

3

provides for freedom of religion; rape is a punishable offense; and Indonesia promotes racial and ethnic tolerance. The Report did observe that resentment of Sino-Indonesian prosperity led to attacks and riots in 1998.

The IJ rejected Oktavia's claims. The IJ denied asylum, finding the application untimely because it was filed more than a year after Oktavia's arrival and that exceptional circumstances did not exist to excuse a late filing. The IJ also denied the withholding of removal and CAT claims because he did not believe that Oktavia's mistreatment rose to the level of persecution. In addition, the IJ found "a total lack of credibility" in her testimony and that of her husband and found that "they have intentionally and deliberately attempted to deceive this Court by giving false testimony, trying to mislead this Court, and attempting to have the Court grant them benefits under the Act based on their perjured testimony." Op. at 12-13.

The BIA dismissed the appeal. Oktavia did not appeal the denial of the CAT claim to the BIA, nor does she raise it now. She does, however, seek review of the final order of the BIA as to asylum and withholding of removal.

**II.**

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). In cases in which the Board merely adopts the IJ's opinion, we review the IJ's decision. *Gao v. Ashcroft,* 299 F.3d 266, 271 (3d Cir. 2002). Our scope of review is extremely narrow: we will affirm any finding of fact supported by substantial evidence.

4

*Abdille v. Ashcroft*, 242 F.3d 477, 483-484 (3d Cir. 2001) (citations omitted). This means that we must uphold the IJ's factual findings if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Furthermore, we are bound by the findings of fact unless a reasonable adjudicator would be compelled to conclude to the contrary. *Abdille*, 242 F.3d at 484 (citations omitted).

## III.

Oktavia raises two main issues on appeal. First, she argues that the IJ erred in not granting her asylum or withholding of removal. Second, she argues that the IJ's adverse credibility determination was based on speculation and conjecture.

### A. <u>Asylum Claim</u>

Under 8 U.S.C. § 1158(b)(1), the Attorney General may grant asylum to an alien who is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). Generally speaking, to qualify as a refugee, an applicant must show that he or she is unable or unwilling to return to his or her country because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 423 (3d Cir. 2005) (citations omitted). In addition, to qualify for asylum, an alien must "demonstrate by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). This

5

provision, however, does not apply if the applicant can show "extraordinary circumstances" that justify the delay in filing the application. 8 U.S.C. § 1158(a)(2)(D); *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003). Section 1158(a)(3) provides that federal courts do not have jurisdiction to review the determination of the Attorney General under 8 U.S.C. § 1158(a)(2).

Pursuant to 8 U.S.C. § 1158(a)(2)(B) and (D), the IJ denied Oktavia's application for asylum as untimely. The IJ explained that the application was filed more than one year after her arrival and found that no exceptional circumstances existed to excuse the delayed filing. We lack jurisdiction to review this determination. 8 U.S.C. § 1158(a)(3); *Tarrawally*, 338 F.3d at 185-186.

## B.    <u>Withholding of Removal Claim</u>[2]

The Attorney General may not remove an alien to a particular country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231 (b)(3)(A); *Tarrawally*, 338 F.3d at 186. An applicant bears the burden of establishing "that his life or freedom would be threatened in the proposed country of deportation." *Tarrawally*, 338 F.3d at 186 (citing *INS v. Stevic*, 467 U.S. 407 (1984)).

---

[2] During the IJ's discussion of Oktavia's withholding of removal claim, he used the terms "asylum" and "withholding of removal" interchangeably. Because the IJ had already dismissed the asylum claim, we will assume that he was then intending only to analyze the withholding of removal claim.

Thus, to secure a withholding under the INA, the applicant must show that it is "more likely than not" that he will be subject to future persecution. *See* 8 C.F.R. § 208.16(b)(2). That persecution must be on account of race, religion, nationality, membership in a particular social group, or political opinion. *See id.*

Oktavia's brief merely cites general legal propositions and fails to specifically identify any evidence the IJ overlooked in reaching his decision or explain how her life or freedom would be threatened were she to return to Indonesia. That aside, our independent review of the record satisfies us that substantial evidence supports the IJ's decision.

As noted above, Oktavia's testimony before the IJ essentially described three isolated violent incidents over a period of three years, and recounted mistreatment she suffered as a child at school. These events do not, however, rise to the level of persecution. *See Lie v. Ashcroft,* 396 F.3d 530, ___, 2005 WL 278694, at *4 (3d Cir. 2005) ("two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution.") (citing *Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004)). Persecution, after all, is an extreme concept that "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993) (observing that "[i]f persecution were defined that expansively, a significant percentage of the world's population would

7

qualify for asylum in this country"). Because Oktavia did not establish that she had suffered persecution or would be subject to persecution in Indonesia, she was not entitled to withholding of removal.

## C.  Adverse Credibility Determination

Oktavia argues that the IJ's adverse credibility determination rested on a "speculative conclusion that the difference between Petitioner's affidavit and testimony suggests incredibility." Pet. Brief at 3. Oktavia then observes, correctly, that speculation and conjecture do not form a valid basis for making an adverse credibility determination. *See Gao*, 299 F.3d at 272. But observations are not enough. Oktavia must show that the evidence of credibility is so strongly in her favor that, in a civil trial, she would be entitled to judgment on the credibility issue as a matter of law. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (holding that credibility determinations can be reversed only where petitioner's evidence "compels" a reasonable factfinder to find in his favor).

For one thing, Oktavia does not tell us which of the various credibility determinations rests on speculation or conjecture. For another, it is clear that some of her testimony regarding her assaults is contradictory, essential aspects of her testimony regarding her rape and the burning of her car are not supported by her affidavit, and some of her testimony conflicts with her husband's testimony. A reasonable factfinder would surely not be compelled to find in her favor.

8

**IV**.

The petition for review will be denied.