

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2007

# In Re: Chen

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-8037

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Chen " (2007). *2007 Decisions.* Paper 1067.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1067

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 06-8037

_____

In the Matter of Eleanor H. Chen

An Attorney at Law

_____

O R D E R

_____

Present:    Scirica, <u>Chief Judge</u>, Sloviter, McKee, Rendell, Barry, Ambro, Fuentes,
            Smith, Chagares, Jordan and Hardiman, <u>Circuit Judges</u>

            This order is issued pursuant to Rule 10.3 of the <u>Third Circuit Rules of
Disciplinary Enforcement</u> of this Court in regard to a contested disciplinary proceeding
against Eleanor H. Chen, Esquire, a member of this Court's bar.  In accordance with Rule
4.2, <u>Third Circuit Rules of Attorney Discipline</u>, a panel of the Court considering the
merits of a petition for review in which Ms. Chen represented the petitioner referred her
to the Court's Standing Committee on Attorney Discipline due to possible violations of
Rules 2.3 and 2.4, <u>Third Circuit Rules of Attorney Discipline</u>.

            In accordance with Rule 7.3, <u>Third Circuit Rules of Attorney Discipline</u>, the
Standing Committee issued an order to Ms. Chen to show cause why she should not be
subject to disciplinary action.[1]  In response to the show cause order, Ms. Chen, through
counsel, requested a hearing as provided by Rule 10.1, <u>Third Circuit Rules of Attorney
Discipline</u>.  A hearing before the Standing Committee was conducted on February 21,
2007 and the Standing Committee's Report and Recommendation was issued on March
27, 2007.   After limited exceptions to the Report and Recommendation were filed by
counsel, the Report and Recommendation and the record in the disciplinary proceeding
were submitted to the active judges of the Court for consideration.

_____

    [1]The abbreviated procedural history recited in this order reflects only the milestone
events specified by the <u>Third Circuit Rules of Attorney Discipline</u>.  The complete
procedural history is discussed in the Standing Committee's Report and
Recommendation.

On consideration of the Report and Recommendation of the Standing Committee on Attorney Discipline, as supplemented, and the record referred to the Court by the Standing Committee,

It is O R D E R E D that the Report and Recommendation of the Standing Committee is adopted; and,

It is further O R D E R E D that Eleanor H. Chen, Esquire, is publicly reprimanded for her conduct and a proctorship, to be administered by the Standing Committee, is imposed for a period of one year from the date of this order. The Standing Committee is authorized to make any substitution of proctor which might become necessary.

It is further O R D E R E D that this order and the Report and Recommendation will be disseminated and published in the same fashion as a non-precedential opinion of the Court. In accordance with Rule 11, Third Circuit Rules of Attorney Disciplinary Enforcement, the order and Report and Recommendation will also be sent to all courts before which Ms. Chen has been admitted to practice and to the National Disciplinary Data Base and will be maintained by the clerk as a public record as required by Rule 14.3, Third Circuit Rules of Attorney Disciplinary Enforcement.[2]

For the Court,


/s/ Anthony J. Scirica
Chief Judge

Dated: May 24, 2007

---

[2]Due to their bulk, the exhibits to the Report and Recommendation are not attached here.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

C.A. Misc. Record No. 06-8037

—————

In the Matter of

ELEANOR H. CHEN

An Attorney at law

—————

REPORT AND RECOMMENDATION OF THE STANDING
COMMITTEE ON ATTORNEY DISCIPLINE

—————

BEFORE:  GREENBERG, Chairperson, and MCKEE,
and AMBRO, Circuit Judges


This matter has come on before this court, acting through its Standing Committee

on Attorney Discipline, on the adjourned return date of an order to show cause dated

September 28, 2006, directed to Eleanor H. Chen, Esq., an attorney admitted to the bar of

this court in January 1996, directing her to show cause why she should not be subject to

disciplinary sanctions for her violations of Third Circuit Rules of Attorney Disciplinary

Enforcement 2.3 and 2.4.  Chen maintains an active immigration practice in Philadelphia

dealing with removal proceedings and avoidance of removal under various procedures

provided for that purpose and these disciplinary proceedings arose out of that practice.  At

the time the Committee issued the order to show cause it consisted of Judge Greenberg,

Chairman, and Judge Ambro and Judge Fisher.

The proceeding was initiated when the merits panel in Agusalim v. Gonzales, 181

Fed. Appx. 144 (3d Cir. 2006), on May 24, 2006, referred the matter of Chen's conduct to the Committee. In making that reference the Agusalim panel noted that Chen had been engaging in a pattern of disregarding the interests of her clients, ignoring the court's rules, and wasting the court's resources despite the court having given her warnings and criticisms concerning this conduct, including seven orders of the clerk pointing out that Chen had failed to comply with court procedures. Rather than repeat the basis for the reference in full, the Committee has attached a copy of the order to show cause to this report and recommendation. The order to show cause, in turn, explains the reason for the panel's reference in Agusalim of Chen's case to the Committee.

The clerk e-mailed the Agusalim opinion to Chen on the day the panel released the opinion. Chen then took immediate action as that very day she addressed a letter to the panel that we discuss below, a copy of which is attached to this report and recommendation, in an attempt to forestall the disciplinary reference. On or about June 30, 2006, she took the further step of seeking the advice of an attorney experienced in attorney disciplinary matters, Samuel C. Stretton, Esq. Then, on July 5, 2006, more than two months before the Committee issued the order to show cause, Stretton wrote a letter to the clerk of this court advising the court that he represented Chen.

On October 13, 2006, after the Committee issued its order to show cause, Stretton filed two formal responses to the order. In one document, styled "Motion to strike the Rule to show cause and to strike the panel which issued the Rule to Show Cause," Stretton sought an order striking the order to show cause and requested the Committee as

2

constituted to recuse and disqualify itself "due to the taint because of Judge Fisher's improper involvement and participation in this particular matter when he is the defendant in litigation where Mr. Stretton is representing the plaintiffs." The litigation involving Judge Fisher is not related in any way to Chen or to these proceedings. The Committee denied the motion to strike and each of the three judges individually denied the motion to recuse addressed to him. The Committee has not attached the motion to strike or the order denying the motion, as it believes that the matters raised by the motion are no longer in issue. Nevertheless if exceptions to the report and recommendation demonstrate otherwise, the documents, which are part of the record, are available to the court.

Stretton's second formal response was an answer to the order to show cause, a copy of which is attached. It will be noted that the answer largely described Chen's background and practice and denied the facts set forth in the order to show cause in only two respects, both being in a single paragraph on page 4, which recited:

> The first time Ms. Chen was advised by the United States Court of Appeals for the Third Circuit that her briefs were not sufficient was when she received the opinion in the case of Agusalim v. Gonzales, No. 05-1685 (3d Cir., May 24, 2006). (It should be noted in the Rule to Show Cause the date for this decision was erroneously given as 2005).

Stretton was correct as to the date of the Agusalim opinion but, as will be explained, was clearly wrong both as a matter of fact and of law as to when the Court notified Chen that her briefs were not sufficient.

After Stretton filed the answer and the Committee denied the motion to strike, it listed the matter for a hearing pursuant to Disciplinary Rule 10.1. Subsequently,

3

however, Judge Fisher reversed his position on the recusal application and recused himself. Then Chief Judge Scirica designated Judge McKee to substitute for him pursuant to Disciplinary Rule 4.2. By reason of Judge Fisher's recusal the Committee adjourned the case until February 21, 2007, at Philadelphia, at which time Judges Greenberg, McKee and Ambro constituted the Committee and heard the matter.

At the outset of the hearing the Committee asked Stretton about the statement in his answer that "[t]he first time Ms. Chen was advised by the United States Court of Appeals for the Third Circuit that her briefs were not sufficient was when she received the opinion in the case Agusalim v. Gonzales, No. 05-1685 (3d Cir. May 24, 2006)." The Committee did not understand how this statement could be true inasmuch as the Agusalim opinion pointed out that Chen "has been repeatedly criticized by the Clerk's Office and this Court regarding the quality of her work and admonished to comply with Court rules." 181 Fed. Appx. at 147 n.2. Moreover, the Agusalim opinion was quite detailed in this regard, as it referred to other opinions of this court criticizing Chen's work, including Chen v. Gonzales, 164 Fed. Appx. 274, 276 n.6 (3d Cir. 2006); Sunarjo v. Gonzales, 130 Fed. Appx. 621, 625 n.6 (3d Cir. 2005); and Oktavia v. Gonzales, 128 Fed. Appx. 849, 852 (3d Cir. 2005). Furthermore, the Agusalim opinion pointed out that the clerk had issued seven orders dealing with Chen's failure to comply with Court procedures. Accordingly, it seemed to the Committee that it was clear from the authorities that Agusalim itself cited that panels of this Court and the clerk's office had advised Chen before Agusalim that she was disregarding the court rules. Thus, the Committee found

4

Stretton's answer to be inexplicable.

When the Committee asked Stretton about the statement, he explained, much to its surprise, that even though Chen had received the materials to which the Agusalim panel referred criticizing her work, she had not been given notice because she had not read the materials. Indeed, he explained that because Chen was so busy she had not read the entirety of the opinions that the clerk had sent to her in cases in which she was an attorney and, instead, merely had read the end of the opinions setting forth the result.

It seemed to the Committee that Stretton's explanation probably was not correct and that he likely had his facts wrong. It is the belief of the Committee that while the attorneys who appear before this Court often look at the end of an opinion first in order to see the outcome of the case, they read the entire opinions in their own cases. The Committee points out that an opinion as a whole may give significant explanations beyond the concluding paragraph and the judgment that are important to the parties. In effect, Stretton was saying that Chen had been committing repeated acts of legal malpractice, as it cannot be contended seriously that an attorney who does not read the entire opinion rendered on appeal in one of her cases has adhered to a standard of care measured by the skill possessed and employed by practitioners of the profession. See Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (Pennsylvania law).

The Committee also observes that Chen's actual conduct with respect to the Agusalim opinion demonstrated that she read at least that opinion quite promptly and in full and could act on opinions with great dispatch if she cared to do so. As we have

5

noted, the panel decided <u>Agusalim</u> on May 24, 2006. The clerk e-mailed the opinion to her on that day, and Chen surely read that opinion very quickly because on May 24, 2006, she addressed the letter, to which we have referred, to the <u>Agusalim</u> panel reciting that she received the e-mail copy of the opinion that day and asking that the panel "do not refer me to the Pennsylvania Disciplinary Board." Of course, the <u>Agusalim</u> panel in its opinion never mentioned the Pennsylvania Disciplinary Board, a state agency, but it did indicate that "we will refer her to the Third Circuit Court of Appeals' Disciplinary Committee pursuant to Federal Rule of Appellate Procedure 46(c)." 181 Fed. Appx. at 147 n.2. There is no doubt that Chen read that sentence, and that, even though she confused the state board with this Committee, she attempted to head off the initiation of disciplinary proceedings. The disciplinary reference, of course, was not at the end of the text of the opinion but rather was at the end of a long footnote, so she must have read more than the end of the text of the opinion.

Chen answered any question about what she had read when she testified before the Committee and contradicted Stretton. She said that while she had seen the negative commentary with respect to her work that the Court frequently had made, she was so overwhelmed by the responsibilities of her office and her case volume that she had not taken action with respect to her deficiencies. In the circumstances, it is clear that until such time that she actually was facing discipline for her conduct, Chen was indifferent to her repeated violations of the court rules

As we have indicated, Chen denied only two things in the order to show cause: the

date of the <u>Agusalim</u> opinion and the fact that prior to the opinion in that case the Court had advised her that her briefs were not sufficient. The Committee accepts the first denial and agrees with it. It, however, rejects the second denial, as it clearly is wrong as a matter of fact, for the reasons we have set forth, and, even if factually well-founded in the sense that Chen had not read the court's opinions and orders, wrong as a matter of law for a person who receives a document has been given notice of it even if she does not read it. In this regard the Committee points out that the notices to Chen were not buried in long and involved documents so that they could be overlooked.

At the hearing the Committee established that Chen had no other quarrel with the facts in the order to show cause, as it asked Stretton if Chen disputed any other facts set forth in the order to show cause and he said that she did not. Consequently, it is established beyond peradventure that, as set forth in the order to show cause, Chen has been disregarding the interests of her clients, ignoring the court rules, wasting the court's resources, filing substantially boilerplate briefs in many different cases that fail to address the actual legal and factual issues presented by the individual involved in the case, and simply has failed to address the issues in the cases. The undisputed circumstances requiring that the Committee and the Court as a whole reach these conclusions are all set forth in the order to show cause and need not be repeated at length.

The Committee, however, has attached the order striking Chen's brief the Court entered in <u>Tan v. Attorney General</u>, No. 05-3995 (3d Cir. Aug. 9, 2005), and the briefs Chen filed in <u>Agusalim v. Gonzales</u>, No. 05-1685, <u>Widjaja v. Attorney General</u>, No. 05-

7

3268, <u>Chandra v. Attorney General</u>, No. 05-3365, <u>Tanudidjaja v. Attorney General</u>, No. 05-3996, <u>Thiem v. Attorney General</u>, No. 05-4208, <u>Purnomo v. Attorney General</u>, No. 05-5192, <u>Ng v. Attorney General</u>, No. 05-5193, <u>Tirtakusaman v. Attorney General</u>, 05-5573, <u>Tijoe v. Attorney General</u>, No. 06-1470, <u>Budiyono v. Attorney General</u>, No. 05-3737, and <u>Lim v. Attorney General</u>, No. 05-1630, as the order to show cause makes reference to them and they are all part of the record. Unless the briefs are read, the gravity of the situation cannot be appreciated. The Committee has not attached copies of the opinions cited in the order to show cause because the order includes the citations to them and the opinions are easily available to the Court.

There is no doubt that Chen engaged in conduct that violated Third Circuit Rules of Attorney Disciplinary Enforcement 2.3 and 2.4, and it is the recommendation of the Committee that the Court so find. Clearly her conduct violated the Federal Rules of Appellate Procedure, a point acknowledged at the hearing, and was unbecoming a member of the bar of this Court, a point that Stretton would not acknowledge. While the Committee might not recommend that the Court impose a disciplinary sanction for an occasional rule violation, the repeated violations here require that it do so. In particular the filing of essentially identical boilerplate briefs not addressing the actual issues or facts in the cases in which they were filed was highly improper. The truth is that Chen repeatedly filed numerous worthless briefs with this Court.

The real issue here is what the sanction should be. Under Disciplinary Rule 3 discipline may "consist of disbarment, suspension from practice before the Court,

8

monetary sanctions, removal from the roster of the attorneys eligible for appointment as Court-appointed counsel, reprimand, or any other sanction that the Court or a panel thereof may deem appropriate." The Committee has considered this matter at length and has taken particular note of the mitigating information and materials Chen has submitted. To start with, Chen came to the hearing with two character witnesses who are members of the bar active in immigration and removal matters. At the hearing the Committee pointed out that there was no question of character here and that the Committee accepts the fact (laying aside the conduct here) that Chen is a person of good character. Thus, though the Committee did not preclude Stretton from calling the two witnesses, it indicated that he did not need to do so and, in fact, he did not call them. In any event, her good character and the circumstance that she previously has not been subject to attorney discipline proceedings are mitigating circumstances.

Second, the Committee considers that her background is a mitigating circumstance. As Stretton set forth in the answer, Chen grew up in mainland China and came to the United States in 1991 when she was 24 years old. When she came her basic language was Mandarin Chinese. Thus, though she is completely fluent in English, it is her second language. Yet she graduated from Villanova Law School and obtained a master's degree in taxation law. She is both a certified accountant and an attorney at law admitted in New Jersey and Pennsylvania. Any fair-minded observer would regard her educational and professional achievements as at least remarkable and perhaps unique.

Third, she frequently has represented Indonesian nationals in removal proceedings.

The judges on the Committee know from their service on merits panels that Indonesians of Chinese origin often are Christians who are subject to difficulties in overwhelmingly Islamic Indonesia and, notwithstanding the absence of an official government policy in that country promoting religious or ethnic persecution, are aware that there are numerous incidents of assaults on Christians which they attribute to their religion and ethnic background. But her representation of Indonesians of Chinese ethnic background has not been easy, though because of her language fluency she is able to communicate with Indonesian clients in a way that other attorneys are not. In this regard, in his answer Stretton recites that Chen represented her clients at "extremely low fees and at times on a quasi-pro bono basis," and that her clients sometimes fail to pay her and disappear so she cannot locate them. The Committee believes these representations to be true and recognizes that it is unfortunate that her praiseworthy conduct in representing Indonesians for little or no fee in part has led to her problems. Chen's practice apparently has overwhelmed her.

The Committee points out that, if it believed that Chen filed her inadequate briefs after collecting substantial fees, it would not consider her explanations to be mitigating. The Committee believes, however, that she did not act with the intent of overreaching her clients and in this regard it notes that, so far as it is aware, no client has complained about her practice. Of course, it recognizes that her clients are not likely to go to public authorities with complaints, as they may be in the country illegally and naturally would want to keep a low profile.

10

In his answer Stretton sets forth that Chen has taken "measures to change and reform her conduct and to mitigate the problem with her briefs" by filing supplemental briefs and appendices in four cases and new briefs and appendices in seven cases, all of which he lists. He then correctly indicates that the Committee did not mention these supplemental and new briefs in its order to show cause.

Though accurate, the problem with his statement is that Chen took this action after the Agusalim panel referred the matter of Chen's conduct to the Committee and she does not claim in her answer to have done anything to correct her conduct previously or until after she retained counsel. The dates that Stretton lists that she filed the new and supplemental briefs confirm this, as she filed all of the briefs he mentioned after he started representing her. Thus, even though the Committee did not issue the order to show cause until September 28, 2006, clearly Chen took her corrective action after, in any realistic view, this matter had been initiated. Accordingly we are not dealing with a situation in which an attorney took corrective measures before a court initiated proceedings, inherently coercive in nature, with respect to her. Nevertheless, to some degree by taking her corrective measures even after these proceedings had been initiated, Chen has mitigated her conduct. Even more significantly Chen explained to the Committee how she now is taking steps to keep her practice under control by limiting her case load.

At the time of the hearing Stretton, on behalf of Chen, handed up three groups of materials that the Committee is supplying to the Court and are part of the record, namely

11

revised briefs for all her pending cases, the briefs she has filed since August 2006, and her recent case results with the Philadelphia Immigration Court. These materials obviously show a significant improvement in Chen's practice and show that she is submitting what, at least on their face, are unquestionably professionally prepared acceptable materials. The Committee has no doubt but that Chen has the ability to practice law competently and in a professional way. It must be said, however, that the Committee cannot say that her list of recent case results is complete, as they seem to suggest that Chen never loses in the Immigration Court. But the Committee is not clear that this is so. In any event, the Committee believes that the Court is not concerned in these proceedings with the outcome of Chen's cases.

At the time of the hearing Stretton suggested that the Court appoint a proctor to review Chen's work before this court for a limited period. (He did not use the term "proctor," but the duties of the appointee he sought fairly can be characterized as that of a proctor.) Moreover, he volunteered to undertake that position himself, though he did point out that he does not have expertise in immigration and removal matters, so that it might be better if the Court appointed a proctor who was an attorney with such expertise. Though the Committee is not aware of any case in which the Court has made an appointment as Stretton has suggested, it believes that other courts have done so and it is satisfied that the power of the Court under Disciplinary Rule 3 to impose such sanction that the court "may deem appropriate" would include the power to appoint a proctor to review Chen's submissions to this court. While there was no discussion at the hearing

12

with respect to compensation of the proctor, any appointment should be made without any expense to the Court or the public.

The Committee is aware, however, that a proctorship would not be a device without complications. First, the Committee recognizes that the proctor might be regarded in some later proceedings as having entered into an attorney-client relationship with Chen's clients, a relationship with legal implications. Second, there is the question of the confidentiality of communications between Chen and her clients. Third, some of Chen's clients might not want a proctor to review the work on their cases and, if they were aware of the arrangement, might prefer to engage a different attorney to represent them. Finally, there may be additional complications in the relationship that the Committee cannot foresee at this time.

Nevertheless, if Stretton is willing on a voluntary basis (with the right of substitution with the approval of the Committee or the Court) to serve as proctor of Chen's work before this Court to the limited extent of reviewing any document that she submits to the Court for such period as the Court fixes, perhaps one or two years, the Committee believes that it would be appropriate for the Court to appoint him for that purpose. The Committee believes that the terms of the appointment need not require him to make periodic reports to the Court but would require him to report any violation of the Federal Rules of Appellate Procedure or the Disciplinary Rules to the Committee that Chen did not correct before the filing of the brief or document with this Court. At the end of the proctorship period Stretton should advise the Committee that the proctorship has

13

been completed successfully, if that is the case. The Committee reiterates that any appointment should be made without expense to the Court or the public. Moreover, the Committee believes that the Court should not appoint Stretton or anyone else as a proctor for Chen unless that person volunteers to take the appointment.

If a proctor is appointed Chen should be required to advise her client in any case in which the proctor is functioning (that is, any case pending before this Court) of his role in the case and the client should be given the opportunity to seek an attorney to replace Chen if he objects to the arrangement. Fair and open dealing require that this be done. This notification should be applicable to all cases in which Chen is representing a client before this Court at the time the proctor is appointed and to all cases in which she subsequently is retained during the period of the proctorship to represent a client before this Court. The Committee suggests that the Court should require Chen to include documentation in her case files that she has notified the client of the proctorship, to be retained so long as she retains the files.

Finally, the Committee recommends that the Court publicly reprimand Chen. The seriousness of her conduct requires that it do no less. The Committee can understand why the Court might believe that the circumstances of the case require that the Court suspend Chen from practice before this Court for a period of time. Certainly such a suspension would be justified. Yet the Committee believes that Chen is remorseful for her conduct, a conclusion that it reached after observing her and listening to her testimony at the hearing, and it believes that she would view a public reprimand and the imposition of a

14

proctorship as serious sanctions as, indeed, they are. It also believes that a public reprimand together with the proposed period of proctorship would be a sufficient protection for the public. But the Committee points out that it is recommending that the Court issue the public reprimand because it believes that there will be a proctorship. If there are exceptions to this report and recommendation making it clear that there cannot be a proctorship on a voluntary basis on such terms as the Court may impose or if the Court determines not to appoint a proctor, then the Committee recommends that the Court reconsider the discipline as the Committee is making its recommendation as a whole, including both the reprimand and the proctorship.

Respectfully submitted,

/s/ Morton I. Greenberg
Circuit Judge

/s/ Theodore A. McKee
Circuit Judge

/s/ Thomas L. Ambro
Circuit Judge

Dated: March 27, 2007

15