

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2008

# Hollis v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3840

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Hollis v. Atty Gen USA" (2008). *2008 Decisions.* Paper 233.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/233

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3840
_____

ADAM HOLLIS,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A96-204-388
Immigration Judge: Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 23, 2008
Before: MCKEE, NYGAARD and ROTH, Circuit Judges

(Opinion filed: November 14, 2008)
_____

OPINION
_____

PER CURIAM

Petitioner Adam Hollis, an ethnic Chinese and Catholic citizen of Indonesia,

entered the United States on February 22, 2000 as a non-immigrant B-1 visitor with

authorization to remain for three months. Insofar as he remained beyond the authorized

period, he was served on July 1, 2003 with a Notice to Appear for removal proceedings, alleging that he was removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien present in the United States in violation of the law. On or about July 10, 2003, Hollis applied for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming that he was persecuted in the past, and fears persecution in the future in Indonesia, on the basis of his Chinese ethnicity and Christian religion.

In a statement attached to his asylum application, Hollis stated that he was born in Jakarta and his family used to live in West Jakarta. His father worked in a store and his mother made cakes and sold them for a living. When he was seven, he and his friends were accosted by older native Muslim boys who called him "Chink" and demanded money. Unable to meet those demands, he and his friends were beaten until an older Chinese man chased the assailants away. Hollis went home crying and his father was upset. After that, he played at home and his parents kept a closer eye on him. Some years later, when he was in high school, he was accosted again by a group of native Muslim boys who demanded money. Hollis gave them money in order to avoid a beating.

In 1989, in his second year of high school, a group of Muslim boys blocked Hollis' path as he was riding home on a motorcycle. They struck him with a wooden bar and knocked him off his motorcycle, breaking his left arm. They beat him until he was

2

unconscious. He is certain they knew he was a Christian because he was wearing his school uniform. His father reported this incident to the police. To this day, his left arm is shorter than his right. In 1997, Hollis and a friend opened a computer business. Business was good prior to the May 1998 riots, but, during those riots, his store was burned and looted by native Muslims, and he lost everything. His father was physically assaulted during the riots and suffered a broken leg. Hollis remained in Indonesia until his father recovered and went back to work, and then he arranged to come to the United States to escape the hostility directed at the Chinese by Muslim natives of Indonesia.

Hollis gave testimony at a hearing in Philadelphia Immigration Court concerning the 1998 destruction of his store and beating his father suffered. He also testified about the broken arm he suffered in 1989, and testified that he received only herbal treatment for his broken arm. He testified that his mother and two siblings are alive and living unharmed in Indonesia. His father passed away in 2002. The 2005 United States Department of State International Religious Freedom Report and 2005 Country Report for Indonesia were made a part of the administrative record.

The Immigration Judge denied relief. He ruled that the asylum application was untimely and Hollis did not qualify for a waiver of the one-year deadline. The IJ ruled in the alternative that Hollis could not meet his burden of proof, see Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993). His allegations were insufficient to establish past persecution and thus did not trigger a rebuttable presumption of future

persecution. Hollis was the victim of discrimination and criminal assaults which did not rise to the level of persecution, and the economic harm he alleged was not severe enough to constitute persecution. There also was no evidence that he would be singled out for harm on the basis of a protected ground if he returned to Indonesia, see Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005), even bearing in mind the 2005 State Department reports. In addition, the torture claim lacked an evidentiary basis. Hollis was ordered removed to Indonesia. His application for voluntary departure was granted.

Hollis appealed to the Board of Immigration Appeals, and he also filed a motion to remand, claiming that he was entitled to adjust his status, see INA § 245, 8 U.S.C. § 1255, based on a recent marriage. On August 27, 2007, the Board dismissed the appeal, agreeing first with the IJ that the asylum application was untimely. The Board also agreed that Hollis did not suffer past persecution in Indonesia on account of a protected ground. The isolated assault in 1989 and the destruction of his store in 1998 did not rise to the level of persecution, see Lie, 396 F.3d at 536; see also Fatin, 12 F.3d at 1240. Furthermore, Hollis failed to establish that there is a pattern or practice of persecuting ethnic Chinese Christians in Indonesia, see Sukwanputra v. Gonzales, 434 F.3d 627 (3d Cir. 2006). His mother and siblings were living safely in Indonesia, and for this reason, he could not establish that he has a well-founded fear of future persecution. Hollis also failed to demonstrate that it is more likely than not that he would be tortured upon his return, and he thus did not establish his eligibility for protection under the Convention

4

Against Torture.

The Board denied the motion to remand because Hollis failed to establish prima facie eligibility for adjustment of status. First, he failed to submit any evidence that the marriage, which was entered into during removal proceedings, was bona fide. Second, although Hollis claimed to have married a United States citizen, the Form I-797C Notice of Action submitted with the motion to remand indicated that the application was made on behalf of a husband or wife of a permanent resident. Therefore, even if the visa petition was approved, Hollis would not have a visa immediately available to him, and would not be eligible to adjust his status, 8 U.S.C. § 1255(a). Third, he had not maintained continuous lawful status and therefore was ineligible to adjust his status on that basis, 8 U.S.C. § 1255(c)(2). Hollis has timely petitioned for review.

We will deny the petition. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). Because the Board issued its own decision, we review only the Board's decision. Wu v. Ashcroft, 393 F.3d 418, 421 (3d Cir. 2005). The determination that Hollis delayed too long in applying for asylum and that he did not show changed country conditions or extraordinary circumstances relating to the delay,[1] is unreviewable. 8 U.S.C. § 1158(a)(3). See also Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003); Sukwanputra, 434 F.3d at 633 (3d Cir. 2006) (judicial review bar of §

_____

[1] If the alien can establish "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application," failure to file the application within the one year period may be excused. 8 U.S.C. § 1158(a)(2)(D).

1158(a)(3) does not violate Due Process Clause). Although, under the REAL ID Act of 2005 we retain jurisdiction over constitutional claims or questions of law raised upon a petition for review, 8 U.S.C. § 1252(a)(2)(D), the existence of changed country conditions or extraordinary circumstances is a discretionary and factual determination over which we do not have jurisdiction. See Jarbough v. U.S. Attorney General, 483 F.3d 184, 189 (3d Cir. 2007). See also Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 329-30 (2d Cir. 2006). Hollis does not challenge the untimeliness determination on any basis, let alone one that would give us jurisdiction.

The standard for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." The standard is more exacting than the asylum standard and requires the alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). The Board's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v.

6

Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Hollis made no showing that the Board's conclusion that he failed to demonstrate past persecution is not supported by reasonable, substantial and probative evidence on the record considered as a whole. Elias-Zacarias, 502 U.S. at 481. He did not establish that the incidents on which his application was based were the type of harm recognized as constituting persecution. See Fatin, 12 F.3d at 1240 (3d Cir. 1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). The 1989 assault, which occurred while he was in high school, was an isolated incident of criminal activity. He was not harmed during the 1998 riots, and, although he suffered economic loss, it was not so severe as to deprive him of the necessities of life. See Li v. U.S. Attorney Gen., 400 F.3d 157, 167-68 (3d Cir. 2005).

Hollis did not present evidence that he might be singled out for persecution. Following Lie, 396 F.3d at 536, which addressed a Country Report from 1999, we left open the possibility that subsequent reports might show a pattern or practice of persecution of Chinese Christians in Indonesia, see Sukwanputra, 434 F.3d at 637 n.10, but neither the 2005 Country Report nor 2005 Religious Freedom Report compel the conclusion that there is a pattern or practice of persecution. Also, Hollis does not contest

7

the Board's finding that his mother and siblings continue to live in Indonesia without experiencing problems, and this fact undercuts his claim of a well-founded fear of persecution, Lie, 396 F.3d at 537. Finally, the Board concluded that Hollis did not meet his burden of establishing that it is more likely than not that he will be tortured upon his return to Indonesia, 8 C.F.R. §§ 208.16 and 208.18. The record does not compel a different conclusion.

We further conclude that the Board did not abuse its discretion in denying Hollis' motion for a remand, because he failed to establish eligibility for adjustment of status based on his marriage to a United States citizen. Where the Board concludes that a petitioner has failed to establish a prima facie case for the underlying relief sought, the Board's findings of fact are reviewed for substantial evidence, but its ultimate decision to reject the petitioner's motion to remand is reviewed for an abuse of discretion. Korytnyuk v. Ashcroft, 396 F.3d 272, 283 (3d Cir. 2005). The regulations governing adjustment of status render ineligible an alien who seeks to adjust status based on a marriage which occurred while the alien was in removal proceedings, 8 C.F.R. § 245.1(c)(8). There is an exception for an alien who establishes that his marriage is *bona fide* where the alien provides clear and convincing evidence that the marriage was entered into in good faith and not for the purpose of procuring immigration benefits, 8 C.F.R. § 245.1(c)(8)(iii)(F), but Hollis submitted no evidence that his marriage was *bona fide.* In addition, he failed to address the Board's finding that his Form I-797C Notice of Action indicated that his wife

was only a lawful permanent resident, A.R. 14, or the Board's indisputable finding that he failed to maintain lawful status in the United States since his entry in 2000. The record does not compel a different conclusion from that of the Board with respect to these findings, and thus denial of the motion to remand was within the Board's discretion.

For the foregoing reasons, we will deny the petition for review.