

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2005

# Wu v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-3761

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wu v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1542.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1542

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-3761
_____

YAN LAN WU

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE
UNITED STATES

_____

On Appeal from the United States Department of Justice
Board Of Immigration Appeals
BIA No. A77 340 613

_____

Argued October 26, 2004

BEFORE: NYGAARD, AMBRO and VAN ANTWERPEN,
Circuit Judges

(Filed  January 4, 2005)

Marco Pignone, III, Esq. (Argued)
Wilson & Pignone
117 South 17th Street
Suite 908
Philadelphia, PA 19103

*Counsel for Petitioner*

David E. Dauenheimer, Esq. (Argued)
Richard M. Evans, Esq.
Douglas E. Ginsburg, Esq.
Lyle D. Jentzer, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

_____

OPINION

_____

VAN ANTWERPEN, <u>Circuit Judge</u>

Before us is a Petition for Review of a decision by the United States Department of Justice Board of Immigration Appeals ("the Board") affirming the conclusion of an Immigration Judge that an applicant did not qualify for asylum or withholding of removal because of alleged

2

religious persecution within the People's Republic of China. The question before us is whether the denial of an asylum application is supported by substantial evidence where an applicant, in an initial interview, articulated a fear of persecution from 'people' but, in later testimony before an Immigration Judge, indicated it was police and local officials who had persecuted her. For the foregoing reasons, we shall grant this Petition to the extent that we remand for clarification of certain findings.

# I

Yan Lan Wu is a native and citizen of China,[1] and is a Christian. She entered the United States on January 30, 2001 via an airline flight originating in Sao Paolo, Brazil.[2] When she refused to board an airplane bound for Thailand, and it was discovered that she had no travel documentation, she was taken into custody by immigration officials. When questioned by an immigration officer, Ms. Yan stated, through an interpreter, that she feared she might be incarcerated if she returned to China because she was a Christian. She was asked

---

[1] Throughout this opinion, the People's Republic of China shall be abbreviated simply as "China."

[2] Ms. Yan tendered a falsified Thai passport to board the airplane. However, this passport was taken from her prior to boarding and was not returned.

3

who was harassing her because of her religious beliefs, and replied "only the people in the village." The officer found Ms. Yan inadmissible and processed her for removal.

Ms. Yan applied for asylum, withholding of removal, and request for relief under Article 3 of the United Nations Convention Against Torture on July 31, 2001, and later testified before Immigration Judge Rosalind Malloy in support of her application on January 23, 2002. Ms. Yan testified that she and her family spread the message of Christianity to the people of her home city. They distributed religious literature, and held Christian activities such as Bible study, prayer, and the singing of religious songs, usually within the family home. On or about September 15, 2000, it was discovered that Ms. Yan's family was practicing Christianity in an otherwise Buddhist area. The police were called and broke up a religious service taking place in the family home. Ms. Yan's father was arrested, as were three or four others. Upon their release, several of the detainees complained of being beaten while in custody.

Despite the hostility of the non-Christian population, Ms. Yan and her family resumed holding religious activities. On September 28, 2000, on returning from a relative's home out of town, Ms. Yan and her family were informed that many of the Christian parishioners in her village were being arrested by village officials and that these officials wanted to arrest her family. They also learned that village officials had already entered her home. Ms. Yan and her family returned to the relative's home, where they remained for approximately one month. When they inquired about returning to their home

4

village, the family was informed that their house had been sealed and that village officials were prepared to arrest them if the family was caught. Thereafter, Ms. Yan left China, arriving in the United States approximately three months later.

The Immigration Judge found that Ms. Yan failed to establish she had suffered persecution at the hands of the Chinese government. Thus, Ms. Yan's requests for asylum, withholding of removal, and protection under the Convention Against Torture were denied, and she was ordered removed to China. Ms. Yan appealed this decision to the Board, arguing that she had established a history of past persecution, had a well-founded fear of future persecution, and that the Immigration Judge erred in determining that any hardship she and her family had suffered was at the hands of local civilians, not the Chinese government. On August 28, 2003, the Board affirmed the Immigration Judge's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), thus making the Immigration Judge's decision the final agency determination. Ms. Yan filed a motion to reconsider the Board's determination, which was denied. This appeal followed.

## II

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). This Court's jurisdiction over final orders of removal generally leads us to review the decision of the Board. However, in cases in which the Board merely adopts the Immigration Judge's opinion, we will

review that Immigration Judge's decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). Our scope of review in this case is narrow: we will affirm any findings of fact supported by substantial evidence. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). We are thus bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion. 8 U.S.C. § 1254(b)(4)(B) (1999); *see also Abdille v. Ashcroft*, 242 F.3d at 483. Finally, this Court gives *Chevron* deference to the Board's reasonable statutory interpretations. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). However, "deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole." *Balasubramanrim v. Ashcroft*, 143 F.3d 157, 162 (3d Cir. 1998).

## III

As a threshold matter, we address the Government's contention that we are without jurisdiction to hear this appeal because Ms. Yan has not exhausted the administrative remedies available to her. The Government asserts that Ms. Yan "intimates that the Immigration Judge's reliance on the [airport] statement was misplaced" but that "this argument was never raised before the Immigration Judge or on appeal to the Board, and thus [Ms. Yan] has failed to exhaust her administrative remedies."

8 U.S.C. § 1252(d) requires an alien to raise and exhaust all remedies available to her in order to preserve her right to appellate review of a final order of removal. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-5 (3d Cir. 2003). In her Notice of Appeal to the Board, Ms. Yan argued that "the Immigration Judge ignored the fact that [her] father was jailed and tortured by the Chinese government as an underground Christian in China, and erred in finding that [she] doesn't have a fear of [the] Chinese government but the local people." (R. at 110.)[3] Additionally, Ms. Yan contended in her brief in support of her Notice of Appeal to the Board that she has "presented sufficient evidence to the effect that she has face[d] past persecution and will face future persecution on account of her Christian faith," that "police raided [her] home," and that her "home was under surveillance." (R. at 81-88.) As we recently held in *Bhiski v. Ashcroft*, 373 F.3d 363, 367-68 (3d Cir. 2004), so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies. In *Bhiski*, the petitioner failed to file a brief in support of his Notice of Appeal. We found that when a claim is not so complex as to require a supporting brief, simply putting the Board on notice through a Notice of Appeal is sufficient. While the Government is technically correct that Ms. Yan did not explicitly argue that the Immigration Judge erred in

---

[3] "R. at" refers to the specified page within the certified administrative record.

considering only her airport interview, she did contend in her Notice of Appeal that the Immigration Judge's conclusion is not supported by substantial evidence within the record. The Board, therefore, was put on notice that there was a claim of error hovering around the Immigration Judge's findings and, consequently, her exclusive reliance on the airport interview, during its review *de novo*. While it is always preferable for a petitioner to articulate his or her argument before the Board in an unambiguous manner, we are confident that Ms. Yan's Notice of Appeal and brief in support of her application made the Board aware of what issues were being appealed.[4] Thus, Ms. Yan has satisfactorily exhausted the remedies that were available to her, and we reject the Government's argument that we are without jurisdiction to hear this appeal.

## IV

We turn now to the merits of Ms. Yan's case. Congress has delegated to the Attorney General the power to

---

[4] This conclusion should not be interpreted as a relaxation of the requirement of administrative exhaustion. Rather, it is a conclusion that, in this particular case, there was sufficient information available to the Board, as in *Bhiski*, to put it on notice of the issue being raised by Ms. Yan.

grant asylum to an alien who meets the definition of refugee.[5] 8 U.S.C. § 1158(b)(1) (1999). An alien seeking asylum must demonstrate "(1) an incident, or incidents, that rise to the level of persecution; (2) that is [or are] 'on account of' one of the statutorily-protected grounds; and (3) is [or are] committed by a government or forces a government is either 'unable or unwilling' to control." *See Abdulrahman v. Ashcroft*, 330 F.3d at 592 (*quoting Gao v. Ashcroft*, 299 F.3d at 272). If past persecution is not established, an alien must, in order to seek asylum, establish a subjective "well-founded fear" of future persecution that is objectively reasonable. *See Gao v. Ashcroft*, 299 F.3d at 272. Therefore, aliens have the burden to establish they are eligible for asylum. *See Id.* In contrast to the discretionary relief available to asylum seekers, an alien is entitled to withholding of removal if his life or freedom would be threatened because of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A) (1999). To qualify for withholding of removal, an applicant bears a higher burden: she must demonstrate that it is more likely than not that she

---

[5] A refugee is a person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42)(A) (1999)

will face persecution if she is removed. *Miah v. Ashcroft*, 346 F.3d 434, 439 (3d Cir. 2003).[6]

The Immigration Judge found Ms. Yan to be entirely credible when she represented she was a Christian (R. at 136), and that her testimony was credible. (R. at 141.) The Immigration Judge then determined that Ms. Yan was not at risk of being persecuted by the Chinese government or agents it could not control upon return to her home village: "This is just resentment by one religious group in the village against another religious group . . . [;] it is not the government that is sponsoring scorn and bad treatment of [Ms. Yan]..."[7] (R. at 137-38.) For this reason, the Immigration Judge determined that Ms. Yan had not met her burden for asylum, and consequently did not meet the heavier burden for withholding of removal. (R. at 141.)

The Immigration Judge's finding that Ms. Yan was not at risk of religious persecution from the Chinese government or its agents stems from statements made by Ms. Yan during

---

[6] Because Ms. Yan's Petition for Review before this Court only seeks review of the Board's decision dismissing her denial of asylum and withholding of removal, we shall not further consider her application under the Convention Against Torture.

[7] Ms. Yan correctly notes that the Board has found that persecution may be found even where harm is caused by persons a government is unable or unwilling to control. *Matter of S-A-*, Int. Dec. 3433 (BIA 2000).

her initial airport interview. (R. at 421-25.) Specifically, the Immigration Judge draws attention to the following exchange:

"Q: Have you ever been harra[sed, t]hreatened or harmed by the Chinese p[olice, g]overnment or military for any reason because of your religi[ous b]eliefs or for any other reason?

A: No, only the people in the village."[8]

(R. at 423.) Later, she was asked:

"Q: Will you face any other harm other than the scorn of villagers?

A: No."

(R. at 425.) Based on these statements, the Immigration Judge found that it was local civilians, not the Chinese government or its agents, who might persecute Ms. Yan for her religious beliefs. While stating Ms. Yan's later hearing testimony was credible (R. at 141), the Immigration Judge concluded that she had not met her burden to establish either past or future persecution by the Chinese government or its agents. (Id.) What is striking about this conclusion is that the Immigration Judge, while finding Ms. Yan to be a credible witness, did not consider her repeated reference to "police,"

---

[8] The curious editing of the immigration officer's question above is the result of the passage being obscured by the page's orientation in the administrative record.

11

"arrest," "village officials," or "village authority" throughout her hearing testimony as words evincing state-sponsored persecution.  (R. at 235-75.)  If the Immigration Judge did consider this testimony, she did not explain why this testimony was discounted.

Ms. Yan contends that her statements made during the airport interview cannot be the sole basis for the Immigration Judge's conclusions, because the words "people" and "villagers" are ambiguous and could refer to village officials rather than unaffiliated townspeople.[9]   The Immigration Judge's findings will be upheld to the extent that they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Abdulrahman v. Ashcroft*, 330 F.3d at 597.

From the record before us, we cannot say that the Board's determination that it was local villagers, and not government officials, who were persecuting Ms. Yan and her fellow parishioner, is supported by substantial evidence. During her testimony, Ms. Yan made several statements

---

[9] We have held that the Board may rely upon an airport interview where it represents an accurate account of the persecution suffered in a home country.  *Balasubramanrim v. Ashcroft*, 143 F.3d at 162-64.  However, in situations (such as in this case) where an alien speaks through an interpreter and uses an ambiguous statement that is not further inquired into by the immigration officer, such interviews may be entitled to less weight.  *Id.*

alleging as such:

"The local village officials saw that we had meetings all the time, and they were all Buddhists." (R. at 243.)

"...The village called some police...the police came over..." (Id.)

"The police came in, they pushed me to the ground, and told us (indiscernible) to stay beside the walls, and then they saw my father behind us, and they said I know it's you, and you are doing this (indiscernible) again." (R. at 244.)

"[The police] came into our bedrooms and they find out the bible, and they tore them, they tore the bible and messed up all those things, and they also searched the house to see whether or not there are other people inside the house." (R. at 244-45.)

"My father said the police told them not to believe in Jesus Christ, not to pass any (indiscernible). And my father did not believe, so they hit my father with a stick on his back." (R. at 246.)

"...In the morning on September 28th, the village authority, village people wanted to arrest all the Christians in the village." (R. at 250.)

(*See also* R. at 251:6-7; R. at 253:6.)  Of course, a reviewing court cannot supersede an administrative agency's findings simply because an alternative finding could be supported by

13

substantial evidence.  *Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir. 2003).[10]  However where, as here, the Immigration Judge finds a witness to be credible, but then renders a decision that is contrary to that testimony without explaining why, we cannot say at this point that such a decision is supported by substantial evidence.  The Immigration Judge seized upon two statements made by Ms. Yan at her airport interview and relied on them at the expense of the entirety of her testimony that the Immigration Judge appears to have deemed to be credible.  We will not speculate as to the reason for this inconsistency, but it should be resolved and explained if the findings of the agency are to be given deference.[11]  We recognize that United States Immigration Judges and the Board play a vital role in the immigration process, and that they are often inundated with many cases that must be vetted under unforgiving deadlines.  However, given the record before us, we must respectfully return this case to the agency for a determination of whether the record, when taken as a whole, supports Ms. Yan's application for asylum.

---

[10] Indeed, the Immigration Judge need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision, as long as that decision is substantially supported.  *See Morales v. INS*, 208 F.3d 323, 328 (1st Cir. 2000).

[11] At oral argument, counsel suggested that there may be an error in the hearing transcription.

## V

In addition to Ms. Yan's application for asylum, the Immigration Judge denied her application for withholding of removal. Because the Immigration Judge found Ms. Yan ineligible for asylum, her application under the higher standard for withholding of removal was summarily dismissed. We will grant Ms. Yan's Petition and remand to the Board (which then may remand to the Immigration Judge) for further, more specific findings of credibility and a full determination of whether the administrative record, as a whole (including her testimony before the immigration court), provides substantial evidence in support of either granting or refusing her applications for asylum and withholding of removal. We stress that we are remanding because the Immigration Judge found that Ms. Yan was credible, and at the same time rejected portions of her testimony without explanation. We express no opinion as to the ultimate outcome and whether or not Ms. Yan has suffered or will suffer mistreatment rising to the level of persecution.[12]

The Petition for Review is therefore granted, and this case is remanded to the Board for further consideration

---

[12] The term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993). It does not, however, "encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.*

consistent with this opinion.

*Yan Lan Wu v. John Ashcroft*, No. 03-3761

NYGAARD, Circuit Judge, dissenting.

I respectfully dissent because I do not believe the record compels a conclusion that Petitioner has suffered—or will suffer—mistreatment rising to the level of persecution. Accordingly, remand to the Board is unnecessary and I would deny the petition for review.

The term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993). It does not, however, "encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* The IJ—relying on statements Petitioner made in her airport interview—found that Petitioner had not demonstrated mistreatment rising to the level of persecution. (A.R. at 137). This finding is supported by substantial evidence. For instance, during the airport interview, Petitioner stated that she had not been harassed, threatened, or harmed by the government of China or its military. (Id. at 423). She also stated that if sent back to China she would be "treated badly and scorned by the local people." (Id. at 425). When asked whether she would face any harm other than the scorn of the villagers, she said "[n]o." (Id.). Under our deferential standard of review, we are not to disturb an IJ's finding of fact unless the evidence compels a conclusion contrary to that

16

which the IJ reached.  *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir. 2001).  Although the evidence in this case might support a conclusion that Petitioner has been persecuted, it does not *compel* that conclusion.  Thus, I would uphold the IJ's finding that no persecution occurred.

Next, I disagree with the majority that Petitioner's airport interview is unreliable and therefore potentially entitled to less weight.  It is true we have cautioned against over-reliance on inconsistencies between an airport interview and an asylum applicant's hearing testimony.  *See Balasubramanrim v. Ashcroft*, 143 F.3d 157, 162–63 (3d Cir. 1998).  Caution is required because arriving aliens, hampered by an inability to communicate in English and haunted by traumatic memories, might have difficultly articulating their circumstances with a high degree of consistency.  *Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003).  Thus, the manner in which information is elicited during an airport interview is critical to its probative value.  *Id.* at 477.  In the present case, however, the record reveals a fair, careful, and relatively thorough airport interview.

In *Balasubramanrim*, 143 F.3d at 162, we found an airport interview insufficiently reliable as evidence for several reasons.  The airport interview at issue was conducted in English, and no translator was provided for the petitioner, who was not fluent in English.  *Id.*  The transcript of the interview was hand-written, leaving the Court unsure as to how it was prepared or whether it was an accurate recitation of the petitioner's testimony.  *Id.*  And the petitioner was not asked appropriate follow up questions, designed to elicit the

17

details of his asylum claim. *Id*. None of these problems tainted Petitioner's interview. Her interview was conducted in Mandarin, Petitioner's native language. (A.R. at 421). Petitioner signed the typed transcript of the interview, indicating that she had read it or—as is more likely—had it read to her, and that it was a full and accurate record of her interview. (Id. at 425). And, significantly, the immigration official asked appropriate follow up questions, designed to elicit the details of Petitioner's claim. For instance, when Petitioner said she feared being locked up, the immigration official followed by asking who would lock her up. (Id. at 422). Although we must view with caution reliance on airport interviews, the record before us reflects no reason why such reliance was misplaced here. I do not believe, therefore, that the IJ erred by considering the airport interview. Because Petitioner's statements in the airport interview were appropriate for consideration, substantial evidence supports the IJ's finding that nothing rising to the level of persecution has occurred. I am sympathetic to the suffering Petitioner has endured. Nevertheless, because we must afford due respect to our standard of review, I would deny the petition.