

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2007

# Sutiono v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Sutiono v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5205
_____

EVIE SUTIONO;
JOSEF SUTIONO,

Petitioners
v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY DEPARTMENT OF HOMELAND SECURITY,

Respondents
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board Nos. A96 241 038 and A96 241 039)
Immigration Judge:  Miriam K. Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
February 16, 2007

Before:  SMITH and FISHER, *Circuit Judges*, and DOWD,[*] *District Judge*.

(Filed: February 20, 2007 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

----

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

The Petitioners seek review of a final order of the Board of Immigration Appeals ("BIA") denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because we find that the Immigration Judge's ("IJ") decision that the BIA adopted was supported by substantial evidence, we will deny their petition for review.

## I.

As we write only for the parties, we will forgo a lengthy recitation of the factual and legal background to this case. Evie and Josef Sutiono are ethnic Chinese and practicing Christians who are natives and citizens of Indonesia. They obtained student visas and entered the United States on January 12, 2002, and November 2, 2001, respectively. On November 25, 2002, Evie applied for asylum, withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, and protection under Article III of the CAT. Her husband Josef was included as a derivative beneficiary on the application.

Evie conveyed her alleged grounds for asylum and withholding of removal through an affidavit and her May 20, 2004, testimony before the IJ. She began by describing an incident when she was in elementary school, when a Muslim student threw a rock at her. While she was screaming in pain, an adult male told her "shut up Chinese, go back to your country."

In junior high school, Evie was riding a bus to a friend's house when a group of Muslim students surrounded her. One began to beat and grab her. When she cried for

2

help, the boys laughed and said "look at that Chinese, she whine for getting more pleasure." Instead of making the boys stop, the bus driver forced Evie to exit and take another bus. As she was leaving, one boy kicked her again.

These incidents continued in February 1998, when Evie was approached by a group of Muslim males while she was shopping with her boyfriend. One of them intentionally touched her inappropriately. When her boyfriend protested, he was struck, and they were both robbed.

According to Evie, the worst incident she experienced was on May 13, 1998. That day, stores owned by ethnic Chinese Indonesians were looted and burned, and there were numerous reports of Chinese women being raped as part of an anti-Chinese riot. On her way home from work, the car Evie was riding in with her brother, sister, and boyfriend's sister was stopped by an angry mob of Muslims. The mob began to shake the car, and one man shouted "there are Chinese in this car. Hi Chinese, open the door. Get out, if you don't we burn you all alive." At the time, there was a burning car in front of them. Another man broke a mirror off of the car and yelled "Come on, we make a pig barbecue."

When Evie tried to flee the car, she was grabbed by the mob. They violently ripped off her necklace and bracelet. Then they tore off her blouse and bra and groped her. She testified that she felt "like an animal because I'm begging them to please let me go but, well, if, when I'm begging, begging so much they just keep laughing." She was

3

able to escape the mob when a stranger covered her with his coat and led her to safety. As a result of the incident, Evie was terrified to go outdoors without an escort.

Finally, Evie testified that her two sisters, two brothers, mother, and father all still reside in Indonesia. Since the 1998 riot, nothing harmful has happened to her, her husband, or her immediate family that she considers to be related to her ethnicity or religion.

After hearing Evie's testimony, the IJ denied her applications for asylum, withholding of removal, and CAT relief. The IJ found that Evie had suffered past persecution based on one incident during civil rioting in May 1998, but that changed country conditions rebutted the presumption of a well-founded fear of future persecution. In making this finding, the IJ observed that State Department reports did not show that ethnic Chinese were being targeted to the extent they had been around the time of the 1998 riots. In addition, the IJ found it significant that Evie had stayed in Indonesia for four years after the riots without suffering any further harm, and that her family had remained in Indonesia without incident.

The Sutionos appealed the IJ's ruling to the BIA on June 21, 2004. The sole issue raised in that appeal was whether the IJ erred in finding that the presumption of past persecution had been rebutted by evidence of changed country conditions. On October 28, 2005, the BIA affirmed the IJ's decision without opinion. This petition followed.

II.

We exercise jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA has adopted the findings and reasoning of the IJ, we review the IJ's decision. *Sukwanputra v. Gonzales*, 434 F.3d 627, 631 (3d Cir. 2006). In our review, we apply the substantial evidence standard, under which an IJ's decision must be affirmed if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). In other words, "the [IJ's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

The Petitioners first complain that the IJ's finding that changed circumstances in Indonesia rebutted their well-founded fear of future persecution was not supported by substantial evidence. When an alien is "found to have established . . . past persecution [she] shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1); *see also Abdille*, 242 F.3d at 496. However, that presumption may be rebutted if "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A). When past persecution has been established, the Government bears the burden of showing changed circumstances by a preponderance of the evidence. *Id.* § 208.13(b)(1)(ii).

5

Here, substantial evidence supports the IJ's finding that the Government had carried this burden. The Government advanced several State Department reports regarding the improving conditions for ethnic Chinese in Indonesia. The Petitioners argue that these reports are not sufficiently reliable to establish changed country conditions on their own. Notwithstanding our past suggestions to the contrary, *see Ambartsoumian v. Ashcroft*, 388 F.3d 85, 89 (3d Cir. 2004) ("State Department reports may constitute 'substantial evidence' for the purposes of reviewing immigration decisions."), we do not actually need to reach this argument given the other record evidence relied on by the IJ. The record reflects that the IJ did not rely solely on the State Department reports in reaching her decision. She also found other record evidence persuasive. For example, the IJ emphasized Evie's testimony that she remained in Indonesia for four years after the 1998 riots without incident, and that she would not have tried to leave if her boyfriend had not been in the United States. Even after she left Indonesia, her family has continued to live there without incident. In addition, the Government advanced reports from non-governmental agencies that were consistent with the findings of the State Department.

The Petitioners also argue that this evidence does not reflect the kind of "fundamental change" necessary to rebut a finding of past persecution. *See* 8 C.F.R. § 208.13(b)(1)(i)(A). But the case they rely on for this proposition describes changes similar to those regarding ethnic Chinese in Indonesia. In *Shardar v. Ashcroft*, 382 F.3d 318 (3d Cir. 2004), we found that conditions had "radically changed" for members of the

6

Jatiyo Party in Bangladesh based on the fact that some members of the group were serving in the Cabinet, and one Jatiyo Party member, "[a]lthough still formally held in custody," was able to take his seat in Parliament. *Id.* at 322 & n.3. Similarly, the evidence in this case describes how ethnic Chinese are gaining formal acceptance in Indonesia: restrictions on Chinese-language education and publications have been removed, and the State Department Country Report on Human Rights and Practices for 2000 observed that "[r]acially motivated attacks against Sino-Indonesians have dropped sharply since mid-1998." Thus, we are unable to conclude that the evidence compels us to reach a conclusion contrary to the one reached by the IJ.

The Petitioners also argue that the IJ improperly placed the burden on them to establish a well-founded fear of persecution, rather than on the Government to rebut that presumption. We do not agree. Although the Petitioners focus on the IJ's statement that "there is reported no where [sic] ethnic Chinese being targeted for violence or harm to the extent that occurred in May of 1998 during the civil rioting," the record is clear that the IJ never placed the burden on the Petitioners to show that conditions had not changed. Rather, she merely pointed out that they had not overcome the evidence of changed circumstances advanced by the Government. We find that there is substantial evidence in the record to support the IJ's determination that the Government proved by a preponderance of the evidence that circumstances had fundamentally changed in Indonesia since Evie's last incident in 1998.

Finally, the Petitioners contend that the IJ failed to consider the entire record in making the determination that the Government had met its burden of establishing changed country conditions. Specifically, they complain that the IJ did not discuss two articles: a December 29, 2001 *New York Times* article entitled "In Indonesia, Once Tolerant Islam Grows Rigid," and an Agence France Presse article from October 30, 2001, entitled "U.S. State Department Slams Indonesian Record on Protecting Minority." An IJ is required to consider the record as a whole in ruling on an alien's claim for relief, but "the Immigration Judge need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision, as long as that decision is substantially supported." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 425 n.10 (3d Cir. 2005). Here, although the IJ did not mention these two articles in particular, it is clear that she did consider their subject matter as part of the record. Every incident discussed in the *New York Times* article is reported in the State Department Reports that the IJ mentioned in her oral decision. And the Agence France Presse article merely reports on the issuance of the State Department International Religious Freedom Report for 2001, which the IJ also mentioned in her decision. We thus find no error with the IJ's consideration of the evidence.

## III.

For the foregoing reasons, we will deny the petition for review.

8