Kumar Chandana PERERA; Lakshika Krishanthi Jayasuriya; Semali Dulyana Perera, Petitioners

v.

ATTORNEY GENERAL OF the UNITED STATES, Respondent.

No. 10–3182.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 15, 2011.

Opinion Filed: Oct. 5, 2011.

Visuvanathan Rudrakumaran, Esq., New York, NY, for Petitioners.

Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Jeffrey L. Menkin, Esq., United States Department of Justice, Washington, DC, for Respondent.

Before: SLOVITER, SMITH and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Lead petitioner Kumar Perera, his wife Lakshika Jayasuriya, and his minor daughter petition for review of a decision by the Board of Immigration Appeals (BIA) dismissing their appeal from an order denying applications for asylum, withholding of removal, and protection under the United Nations' Convention Against Torture (CAT), and ordering their removal to Sri Lanka. We will deny the petition for review.

## I.

Perera entered the United States with his family on visitors' visas in 2006. Perera began the asylum process in 2007; his wife and daughter filed their own applications in 2009, so as to pursue independent claims for withholding of removal and under CAT. All conceded removability.

Perera is a Sinhalese Buddhist from the Southern region of Sri Lanka. For many years, he worked with Ratnam Kannan[1], his Tamil "best friend" from Batticaloa, a city in the Eastern region of Sri Lanka. Perera and Ratnam collaborated on a garment shop, purchasing clothing abroad to sell at retail.

---

1. Many of the names in the instant action are spelled in myriad ways throughout the record. This opinion uses the spellings proffered by Perera on appeal.

In October of 2006, Ratnam contacted Perera with an urgent request. Ratnam's brother, Mahesh, was being targeted by the Liberation Tigers of Tamil Eelam (LTTE), who suspected that Mahesh and his friends were working for the rival Karuna group[2]; indeed, Mahesh's friends who were Karuna members had been killed by the LTTE. Ratnam implored Perera to shelter his brother, and Perera acquiesced, housing Mahesh in his residence along with Perera's pregnant wife and young daughter. Perera insisted that he had no knowledge of Mahesh's activities and did not seek any additional information from his houseguest. In early December, while Perera was away in Bangkok with his family, Ratnam was arrested; Perera asked Mahesh why this happened, but Mahesh claimed ignorance.

Two days later, while Perera was at work, the Sri Lankan army arrived at his home and arrested both his wife and Mahesh. Learning of the situation from his mother, Perera rushed to his aunt's house, and over the course of several days attempted to free his wife from confinement. Perera's father was informed by army officers that Mahesh was an LTTE member who had been hiding from the army, and that Perera was now wanted for harboring an LTTE member—a serious offense. Perera used some of his father's finances in order to bribe officials to free his wife— who had been mistreated and abused during her ordeal—and then used a pre-existing visa to flee with his family to the United States. He claimed that the Sri Lankan army was still searching for him, and had spread news of his alleged misdeeds far and wide; accordingly, he worried for his and his family's health and safety should they be removed to Sri Lanka.

The Immigration Judge (IJ) denied Perera's petition. She identified numerous problems and inconsistencies in his testimony that she found troubling and indicative of a lack of candor, such as his attempts to circumvent questions, his evasiveness with regard to his knowledge of Mahesh's activities, his inconsistent explanations for why he declined to leave his family alone with Mahesh, and his failure to provide a satisfactory explanation for a lack of affidavits from several principal players in his story. For those reasons, the IJ found that Perera "was not a credible witness." While basing her denial of relief on that ground, the IJ also offered two alternative paths to the same result: Perera had failed to meet his affirmative burden of proof; and, if Perera *were* telling the truth, he had provided material support to an alleged member of a terrorist organization and was thus barred from asylum relief. With regard to relief under the CAT, the IJ acknowledged that "the background evidence makes it very clear the Sri Lankan Government does engage in torture," but found that Perera had "not established that it is more likely than not that he would be singled out for torture should he return." Lastly, the IJ denied his family's claims for relief, on both derivative and independent bases.[3]

Perera filed a counseled appeal, which was dismissed by the BIA. It determined that because "there are discrepancies and implausibilities in [Perera's] testimony, the Immigration Judge's credibility finding is not clearly erroneous." Because Perera was deemed to be not credible, the BIA

---

2. According to the 2008 State Department Human Rights Report included in the record, the Karuna group was or is a government-aligned paramilitary organization led by a breakaway LTTE commander.

3. Jayasuriya did not testify in front of the IJ, although she did provide an affidavit describing her mistreatment while in army custody.

declined to "reach the alternate holding of material support to a terrorist organization."

This counseled petition for review followed.

## II.

We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252. "Where, as here, the BIA agrees with the IJ's conclusion that a petitioner is not credible and, without rejecting any of the IJ's grounds for decision, emphasizes particular aspects of that decision, we will review both the BIA's and IJ's opinions." *Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir.2005); *see also Fiadjoe v. Att'y Gen.*, 411 F.3d 135, 152–53 (3d Cir.2005). We "affirm any findings of fact supported by substantial evidence and are 'bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion.' " *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir.2009) (quoting *Wu v. Ashcroft*, 393 F.3d 418, 421 (3d Cir.2005)). "If we take issue with the application of law to [the] case, we will defer to the authority granted an agency by Congress and remand to the BIA for the appropriate consideration." *Quao Lin Dong v. Att'y Gen.*, 638 F.3d 223, 228 (3d Cir.2011).

## III.

Because Perera applied for asylum after May 11, 2005, the provisions of the REAL ID Act of 2005 apply. *Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir.2007). Under the Act's revised standard for credibility determinations, a factfinder may base her conclusion that an applicant lacks credibility on numerous factors, including demeanor, candor, internal consistency, external consistency (*i.e.* harmony with the record), and inaccuracies, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Adverse credibility determinations are reviewed under the substantial evidence standard, and will not be overturned unless the record compels a contrary conclusion. *Gabuniya v. Att'y Gen.*, 463 F.3d 316, 321 (3d Cir.2006).

As discussed above, the IJ's adverse credibility determination—upheld by the BIA—was, in effect, fatal to Perera's petition. By disbelieving Perera's story of harboring Mahesh and of the army's reaction to it, the IJ negated the foundation of Perera's "fear of future persecution on account of his ... [imputed] political opinion," *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002), which would have been relevant to a determination of his entitlement to asylum and withholding of removal. Perera attacks the integrity of this determination, arguing both that the IJ was "predisposed" to find against him and that the adverse credibility determinations of the IJ and the BIA were not supported by law or the record. Additionally, he urges us to adopt a more stringent standard of review.

 We decline to alter our deferential standard of review. Applying it, we conclude that the record does not compel reversal of the adverse credibility determination. For example, Perera's attempts to explain what he knew about Mahesh's activities could plausibly be viewed as inconsistent and evasive, especially with regard to his decision to take his family to Bangkok rather than leave them alone in the house with Mahesh. Nor was his response to gaps in the record—principally, affidavits from other players in the drama—deemed satisfactory. While the IJ suspected that these inconsistencies stemmed from the "Catch 22" presented by the danger of testifying honestly about harboring a known or suspected terrorist, they were

sufficient to support a more generalized adverse credibility finding under REAL ID.

Nor does the adverse credibility determination appear to be the product of bias. The IJ's disbelief was based on the aforementioned inconsistencies, not on cultural or other misunderstandings. Perera has pointed to no evidence that would compel a finding of a bias.

Accordingly, Perera has not demonstrated the required factors for either asylum or withholding of removal.

 In order to obtain relief under the CAT, Perera was required to show that he would be "more likely than not [to] be tortured if removed to the proposed country of removal" at the "instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 208.16(c)(2), .18(a)(1); *see also Tarrawally v. Ashcroft,* 338 F.3d 180, 187–88 (3d Cir.2003). "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered." 8 C.F.R. § 208.16(c)(3). An adverse credibility determination does not defeat an applicant's ability to meet the CAT burden of proof, so long as the factual predicate of the applicant's claim of future mistreatment is independent of the testimony found to be not credible. *Shou Yung Guo v. Gonzales,* 463 F.3d 109, 114 (2d Cir.2006); *Zubeda v. Ashcroft,* 333 F.3d 463, 476 (3d Cir.2003).

The BIA determined that "the evidence does not establish [that Perera or his family] would qualify for protection under CAT because it is more likely than not that the respondents would be subject to torture by or with the acquiescence of the government in Sri Lanka," implying that Perera had failed to meet his burden of proof. The BIA did not elaborate upon what fac-

tors it used in its analysis. And the Government is incorrect when it claims that the record shows an "absolute dearth of any evidence of past torture or current torture of persons similarly situated to" Perera and his family. Gov't Br. 44. Rather, the State Department's 2008 Human Rights report specifically describes how paramilitary organizations affiliated with the Sri Lankan government practice torture against civilians—especially against those civilians with LTTE connections. However, as Perera's status as a civilian suspected of having LTTE links is intrinsically tied to his testimony—testimony which was found to be not credible—he has failed to show that he would be more likely than not to be tortured if returned to Sri Lanka.

Lastly, Perera argues that the withholding of removal and CAT claims of his wife and daughter were "improperly brush[ed] off" as derivative by the IJ. Perera did not raise this argument in his appeal before the BIA; accordingly, this Court lacks the jurisdiction to consider it. *See Sandie v. Att'y Gen.,* 562 F.3d 246, 250 n. 1 (3d Cir.2009).

### IV.

For the foregoing reasons, the petition for review will be denied.