NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4117
_____

CESAR CERTUCHE-DURAN
a/k/a Cesar Certuche
a/k/a Cesar A. Certuche,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A200-766-700)
Immigration Judge:  Honorable Mirlande Tidal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2013

Before:  McKEE, *Chief Judge*, FISHER and SLOVITER, *Circuit Judges*.

(Filed: November 20, 2013 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Cesar Certuche-Duran ("Petitioner") seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the denial of his request for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will grant the petition in part and deny it in part.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Petitioner, a native and citizen of Colombia, was born in 1983 and entered the United States in 2000.[1] He lived in Cali, Colombia with his father, mother, brother, grandmother, and uncles until he left for the United States. For much of his life, the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), a guerilla revolutionary group, was active in Colombia.

In 1996, members of the FARC tried to recruit the Petitioner's father and uncle, but both men refused. On November 13, 1997, members of the FARC shot and killed the Petitioner's uncle. Although the Petitioner's father reported the murder to the police, there was no investigation or arrest. Soon after, in late 1997 or early 1998, two FARC members attempted to abduct the Petitioner and his brother into a van. The brothers

_____

[1] This account of the factual background relies upon the Petitioner's and his brother's testimony on April 25, 2012 before an Immigration Judge, who found the Petitioner's testimony to be credible and consistent with the evidence that he submitted and with his brother's testimony.

managed to escape, but during the attempted abduction, the Petitioner was stabbed in the leg and his brother was stabbed in the shoulder. The men retreated when neighbors came out, threatening that next time, they would kill the brothers. A neighbor provided medical treatment, stitching up the wound on the Petitioner's leg.

The Petitioner left for the United States in June of 2000. Three months later, on September 22, 2000, several men went to the Petitioner's family home and shot his father, uncle, aunt, and cousin. The victims were treated at the hospital and survived. The police arrested two individuals, but released them one month later. The Petitioner's father recuperated at the family home for some time, but after the family received threats, they scattered into hiding and rarely contacted each other to prevent the FARC from finding them. Until the Petitioner's brother came to the United States in 2006, he moved around with various family members because of the threats from the FARC.

The Petitioner's father received threats from the FARC in 2004, 2007, and 2011. Each threat was reported to the police, who suggested measures for self-protection and at least once sent a patrol car to the family home. On at least one of these occasions, the Petitioner's father received the threat at the family home when he had returned to visit his mother.

The Immigration Judge ("IJ") denied the Petitioner's applications for asylum, withholding of removal, and protection under the CAT. The IJ concluded that the Petitioner's application for asylum was untimely because he had not filed the application

3

within one year of his arrival in the United States. The IJ found that the Petitioner's encounter with the FARC in 1997 or 1998 did not rise to the level of past persecution, and that the events involving his family did not establish a clear probability of future persecution. As a result, the IJ found that the Petitioner did not qualify for withholding of removal. Finally, the IJ held that the Petitioner was not eligible for relief under the CAT because there was not clear and convincing evidence that the FARC had pursued him or maintained an interest in him after the attempted kidnapping.

The Petitioner appealed to the BIA and the BIA dismissed his appeal. The BIA agreed with the IJ that his asylum application was untimely. The BIA concluded that the harm that he experienced did not rise to the level of persecution, and rejected his claim that the September 2000 shooting should be considered past persecution because he had already left Colombia when it occurred. The BIA further concluded that the IJ did not err in concluding that the Petitioner failed to show a clear probability of future persecution, observing that neither the Petitioner nor his brother experienced or were targeted for any harm after the kidnapping attempt. The BIA noted that other members of the Petitioner's family continue to live in Colombia but have not been targeted for harm. The BIA also found no error in the IJ's conclusion that the Colombian authorities took steps to offer protection to the family. Finally, the BIA concluded that the Petitioner did not show any past torture or that the FARC would be inclined to torture him in the future.

4

The Petitioner filed a timely petition for review. He also filed a motion for a stay of removal, which this Court granted.

## II.

The BIA had jurisdiction to address the Petitioner's appeal from the IJ's decision under 8 C.F.R. § 1003.1(b). This Court has jurisdiction to review a final order of removal from the BIA pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA affirmed the findings of the IJ and added its own analysis, we will review both decisions. *Martinez v. Att'y Gen. of the U.S.*, 693 F.3d 408, 411 (3d Cir. 2012). This Court cannot review the conclusion that the Petitioner's asylum application was untimely. 8 U.S.C. § 1158(a)(3). We have jurisdiction to review the denial of withholding of removal and relief under the CAT.

We review legal determinations made by the BIA *de novo*. *Escobar v. Gonzales*, 417 F.3d 363, 365 (3d Cir. 2005). The Petitioner has the burden of establishing past persecution and a clear probability of future persecution. *Yu v. Att'y Gen. of the U.S.*, 513 F.3d 346, 348 (3d Cir. 2008). Whether a petitioner has established past persecution or a clear probability of future persecution is a question of fact, and "[w]e affirm any findings of fact supported by substantial evidence and are 'bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion.'" *Camara v. Att'y Gen. of the U.S.*, 580 F.3d 196, 201 (3d Cir. 2009) (quoting *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 421 (3d Cir. 2005)); *see also* 8 U.S.C.

5

§ 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

In order to qualify for withholding of removal, an applicant must demonstrate a clear probability that his or her "life or freedom would be threatened in that country [to which the applicant would be removed] because of the alien's race, religion, nationality, membership in a particular social group or political opinion." *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003) (quoting 8 U.S.C. § 1231(b)(3)(A)) (internal quotation marks omitted). An applicant can meet this standard by demonstrating past persecution, which creates a rebuttable presumption of future persecution, or by showing a clear probability of future persecution upon removal. 8 C.F.R. § 1208.16(b); *see also Garcia v. Att'y Gen. of the U.S.*, 665 F.3d 496, 505 (3d Cir. 2011). To be eligible for relief under the CAT, an applicant must show that it is more likely than not that he or she would be tortured if removed. 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

### III.

The BIA concluded that the IJ properly denied the Petitioner's applications for withholding of removal and relief under the CAT because his experiences did not rise to the level of past persecution, he had not shown a clear probability of future persecution,

6

and he did not show past torture or likelihood of future torture. Upon consideration of the BIA's and the IJ's decisions and the evidence in the administrative record, we are compelled to conclude that the agency did not adequately consider the Petitioner's applications for withholding of removal and relief under the CAT.

In concluding that the Petitioner had not suffered past persecution, neither the IJ nor the BIA adequately considered all of the relevant evidence. The IJ's past persecution analysis focused on the duration and resulting physical harm of the kidnapping attack. Significantly, the IJ failed to mention the murder of the Petitioner's uncle, which closely preceded the kidnapping attempt. Although the BIA's description of the Petitioner's claims did reference the uncle's murder, the BIA did not explain how the murder affected his eligibility for relief. Evidence of the uncle's murder should be considered along with evidence of the FARC's attempt to recruit the Petitioner's father and uncle and its attempt to kidnap the Petitioner and his brother in determining whether the Petitioner established past persecution. *See Caushi v. Att'y Gen. of the U.S.*, 436 F.3d 220, 227 (3d Cir. 2006) (finding error in the IJ's failure to explain its reasons for rejecting evidence including the murder of the petitioner's brother-in-law). Additionally, the IJ and the BIA failed to give adequate weight to the death threat that accompanied the attempted abduction and stabbing. *See Chavarria v. Gonzalez*, 446 F.3d 508, 520 (3d Cir. 2006) (holding that a death threat rose to the level of persecution because it was carried out on account of political opinion and the attackers robbed the petitioner and pointed a gun to his face

while making the threat).  Because the IJ and the BIA failed to give adequate consideration to the death threat and the murder of the Petitioner's uncle, we cannot accept the determination that the Petitioner failed to establish past persecution.

The BIA and the IJ similarly failed to give adequate consideration to important evidence in concluding that the Petitioner did not have a well-founded fear of future persecution in Colombia.  Although the BIA did consider the September 2000 attack on the Petitioner's family in the family home, it determined that there was not a clear probability of future persecution in part because the Petitioner's family continues to live in Colombia, and the Petitioner has not alleged that they have been targeted for harm. The BIA failed to consider, however, that the Petitioner's family has continued to live in Colombia *in hiding*.  When a petitioner's family continues to live in the country *in hiding*, "a lack of continued persecution merely reflects the family members' ability to avoid detection," and, if anything, "substantiates [the petitioner's] assertion that he was persecuted."  *Toure v. Att'y Gen. of the U.S.*, 443 F.3d 310, 319 (3d Cir. 2006).  The facts that the family remains in hiding in Colombia and that the Petitioner's father received threats from FARC after the September 2000 attack directly contradict the BIA's conclusion.  These facts arguably demonstrate, along with the seriousness of the September 2000 attack, that it is more likely than not that the Petitioner will suffer future persecution if removed.   Therefore, we cannot accept the BIA's conclusion that the Petitioner did not show a clear probability of future persecution.

8

With respect to the Petitioner's claim under the CAT, the BIA held that the Petitioner had not shown that FARC members would be inclined to torture him in the future. However, the same evidence that the BIA failed to consider in its past and future persecution analyses should be considered in determining the FARC's interest in harming the Petitioner. "In its assessment of whether an alien will likely be tortured in the country of removal, the BIA must consider 'all evidence relevant to the possibility of future torture.'" *McAllister v. Att'y Gen. of the U.S.*, 444 F.3d 178, 189 (3d Cir. 2006) (quoting 8 C.F.R. § 208.16(c)(3)). Because the BIA and the IJ ignored or failed to adequately consider evidence of the uncle's murder, the death threat, and the family's status in hiding, we cannot accept their conclusion that the Petitioner was not eligible for relief under the CAT.

Finally, in order to be eligible for withholding of removal, the Petitioner must establish that the persecution is "because of [his] race, religion, nationality, membership in a particular social group or political opinion." *Tarrawally*, 338 F.3d at 186. Neither the BIA nor the IJ made a finding on whether the Petitioner's treatment was on account of a particular social group or his political opinion. However, in his brief, the Petitioner argues that he is a member of two particular social groups: (1) family members of those who refused to enlist with FARC; and (2) Colombians who have resisted FARC recruitment and bear scars resulting from the attempted recruitment. These groups bear similarities to the group we recognized in *Gomez-Zuluaga v. Attorney General of the*

9

*United States*, consisting of "women who have escaped involuntary servitude after being abducted and confined by FARC." 527 F.3d 330, 345 (3d Cir. 2008). The Petitioner also argues that his treatment was on account of an anti-FARC political opinion that FARC imputed onto the Petitioner. On remand, the agency should consider whether the Petitioner's treatment was because of his membership in a particular social group or his political opinion.

## IV.

For the foregoing reasons, we will grant the petition for review in part and deny it in part. With respect to the Petitioner's asylum claim, we will deny the petition, because we cannot review the conclusion that his asylum application was untimely. We will grant the petition with respect to the Petitioner's withholding of removal claim and his claim under the CAT, because the BIA did not adequately consider the relevant evidence underlying his claims. We will therefore remand to the BIA for further proceedings consistent with this opinion.