**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1594
_____

SAYDULLO SHERMAHAMADOVIC AKBAROV;
DONOHON HATAMJANOVNA AKBAROVA,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA-1: A099-351-256
BIA-1: A099-351-257)
Immigration Judge: Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 9, 2015

BEFORE: SHWARTZ, KRAUSE AND COWEN, <u>Circuit Judges</u>

(Filed: October 9, 2015)
_____

OPINION[*]
_____

COWEN, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not

Saydullo Shermahamadovic Akbarov and his wife, Donohon Hatamjanovna Akbarova (together, "Petitioners"), petition for review of a final order of the Board of Immigration Appeals, which affirmed the decision of an Immigration Judge ("IJ") denying their motion to reopen and reconsider her August 2010 decision denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

## I.

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis.

Petitioners are natives of the former USSR and citizens of Uzbekistan. They last entered the United States in October 2005. In September 2008, the Department of Homeland Security commenced removal proceedings against them. They each filed their own applications for asylum, withholding of removal, and CAT relief based on their Muslim faith and Akbarov's belief that he and his family had been placed on a "blacklist" by Uzbekistan's National Security Service ("NSS") following Petitioners' wedding. Akbarov testified that an NSS official told him that he and his family were placed on the "blacklist" because they did not practice Islam in accordance with state sanctions. Petitioners also sought asylum because they fear the Uzbek government is targeting witnesses of a massacre of Muslims that occurred in Andijan's Bobur Square. The massacre had followed a protest against the Uzbek government. Although Petitioners did

constitute binding precedent.

not personally witness the events, they claim they have a well-founded fear of future persecution because the Uzbek government may perceive them to have witnessed the event given their arrival in Andijan shortly after the massacre occurred and the fact that they spoke to family and friends who had witnessed it.

The IJ designated Akbarov the lead respondent, as his application presented Petitioners' primary claim. In July 2010, the IJ denied Petitioners' applications for relief, concluding that Petitioners had failed to adequately corroborate their claims. Specifically, the IJ noted that Petitioners did not corroborate the following: (1) their claims regarding the practice of their Muslim faith and their assertion that their practice would bring them to the attention of the Uzbek government, and (2) either the existence of a "blacklist" or Petitioners' presence on it. In addition, the IJ denied their applications on the merits, concluding that Petitioners had not suffered any past persecution, and that they failed to demonstrate a well-founded fear of future persecution because they did not establish that they would be singled out for persecution based on their Muslim faith or that they are similarly situated to individuals against whom there is a pattern or practice of persecution by the Uzbek government. Because Petitioners failed to satisfy the lower burden of proof required for asylum, the IJ also denied their applications for withholding of removal. The IJ also found that Petitioners failed to demonstrate that it was more likely than not that they would be tortured upon returning to Uzbekistan.

Petitioners did not appeal the IJ's merits decision. Rather, they filed before the IJ a timely motion to reconsider her denial of their applications for relief and a motion to

3

reopen. They sought reconsideration, arguing that the IJ (1) had impermissibly denied their applications for relief based on inadequate corroboration, (2) had incorrectly concluded that they were not Muslims who would be persecuted in Uzbekistan and were not similarly situated to those against whom a pattern or practice of persecution was directed by the government of Uzbekistan, and (3) had incorrectly denied their request for CAT relief. Petitioners sought to reopen their case based on what they asserted was previously unavailable evidence.

The IJ denied the motion for reconsideration, concluding that Petitioners had not pointed to any error of law or fact in her prior decision. In addition, the IJ noted that most of the evidence that served as the basis of Petitioners' motion to reopen was not previously unavailable. Of the remaining evidence, the IJ found that there was nothing to support Petitioners' claim that their practice of Islam would subject them to persecution by the Uzbek government. The IJ therefore denied the motion to reopen as well.

On appeal, the BIA affirmed the IJ's decision. As to Petitioners' motion for reconsideration, the BIA concluded that the IJ had adequately provided notice to Petitioners of the required corroboration. Moreover, the BIA concluded that the IJ properly found Petitioners failed to establish a well-founded fear of future persecution, in light of the fact that they were unable to demonstrate that they were similarly situated to those who are persecuted by the Uzbek government. The BIA refused to consider whether Petitioners were part of additional social groups that had not been properly asserted before the IJ. Finally, the BIA concluded that the IJ correctly denied the motion

4

to reopen, agreeing that most of the "new" evidence was not previously unavailable and the remaining evidence did not establish prima facie eligibility for relief. The current appeal followed.

## II.

Petitioners appealed the IJ's denial of their motions to reopen and reconsider to the BIA, which affirmed the IJ's decision. "If the BIA summarily affirms an IJ's order, we review the IJ's decision as the final administrative determination. When the BIA issues a separate opinion—as it did in [Petitioners'] case—we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010) (citations omitted).

We review the BIA's denial of a motion to reconsider or a motion to reopen for abuse of discretion. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir. 2011). We do not disturb factual findings of the agency unless they are unsupported by substantial evidence. *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (citation omitted).

### A.     The Motion to Reconsider

There is no merit to Petitioners' argument that the IJ failed to adequately consider their country conditions materials. As the BIA noted, it is well settled that an IJ "need not discuss each and every piece of evidence . . . when rendering a decision, as long as that decision is substantially supported," and we are persuaded that the IJ adequately considered the record before it. *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 425 n.10 (3d Cir. 2005).

Petitioners primarily take aim at the IJ's conclusions regarding corroboration of certain of their claims. Before concluding that an applicant's claim fails for lack of corroboration, an IJ is required to conduct the following three-part inquiry: (1) identify the facts for which it is reasonable to expect corroboration; (2) determine whether the applicant has corroborated those facts; and if not, (3) analyze whether the applicant has adequately explained his or her failure to provide the corroboration. *Toure v. Att'y Gen.*, 443 F.3d 310, 323 (3d Cir. 2006) (applying to IJs the rule endorsed in *Abduali v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001)). In addition, "the IJ must give the applicant notice of what aspects of the applicant's testimony need corroboration. If the applicant cannot produce corroborating evidence, the IJ must also afford the applicant an opportunity to explain why." *Sandie v. Att'y Gen.*, 562 F.3d 246, 253 (3d Cir. 2009).

Petitioners argue that the IJ did not provide the requisite notice of the need for corroboration. The IJ addressed these arguments, concluding that she properly abided by the Third Circuit's requirements. Petitioners did not meaningfully address the IJ's specific findings regarding notice in their appeal to the BIA, and they do not do so now. Instead, they argue that they adequately corroborated their claims regarding their Muslim faith and whether their practice of Islam diverged from state-sanctioned Islamic practices, and that they adequately explained why they could not corroborate the existence of the NSS blacklist and their placement on it and their failure to provide affidavits from family members in Uzbekistan.

As an initial matter, we assume, as the BIA did, that Petitioners are practicing Muslims, and do not therefore address any arguments on this point. Moreover, notwithstanding Petitioners' arguments, they did not provide corroboration for their claims that their practice of Islam was anything other than what is sanctioned by the Uzbek government or that they are on a blacklist and it was not error for the IJ to require corroboration of those claims. Even assuming Petitioners' Muslim faith, such faith is not enough, by itself, to warrant relief here. As Petitioners' own evidence makes clear, some Muslims practice their faith without state interference. Indeed, Petitioners themselves acknowledge that Akbarov has freely traveled between Uzbekistan and the United States. He left Uzbekistan in 2004, returned in 2005 for his wedding, and, despite being questioned by the NSS, then departed again with his wife, all without incident. As to Petitioners' claims regarding their membership in a particular social group that is subject to persecution, the IJ and the BIA correctly determined that Petitioners have not demonstrated that they are similarly situated to those persecuted by the Uzbek government.

On this record, we conclude that Petitioners have presented no legal or factual error to indicate that the BIA abused its discretion in denying their motion for reconsideration.

B.    The Motion to Reopen

Petitioners filed a motion to reopen, claiming that new evidence supported their claims. Petitioners concede that most of this evidence was published before their hearing,

Pet'rs' Br. at 49, but argue that the BIA should have considered it because it was published only days before their hearing. This is not the standard. *See* 8 C.F.R. § 1003.23(b)(3) ("A motion to reopen will not be granted unless the Immigration Judge is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."). Thus, the BIA did not abuse its discretion in concluding that this evidence did not warrant reopening.

Moreover, the BIA considered the evidence Petitioners presented that was previously unavailable to them at the time of the hearing. The BIA noted that Petitioners' claim is based primarily on the fact that they had a "traditional" wedding, did not serve alcohol at their wedding, and separated their guests by gender. However, after reviewing the new evidence, the BIA found that none of the evidence submitted explained how "traditional" weddings differ from government sanctioned weddings, nor did any of the evidence indicate that such practices subjected Muslims to government persecution. Indeed, even on appeal, Petitioners do not explain how their practice of Islam differs from practices that are permitted by the Uzbek government. Accordingly, we discern no error in the BIA's denial of Petitioners' motion to reopen.

## III.

For the foregoing reasons, we will deny the petition for review.