NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 11-2213
———

MAHMOUD MANAA-ATALLAH,
                                        Petitioner

v.

THE ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
———

On Petition for Review of the Board of Immigration Appeals
(Agency No. A035-741-972)
Immigration Judge:  Honorable Walter Durling
———

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 15, 2012

Before:  SMITH, FISHER and GARTH, *Circuit Judges*.

(Filed: May 16, 2012)


———

OPINION OF THE COURT
———

GARTH, *Circuit Judge*.

        Petitioner Mahmoud Manaa-Atallah was ordered removed from the United States.

Upon an application for relief under the Convention Against Torture, he was granted

deferral of removal.  On appeal, the Board of Immigration Appeals denied Manaa-Atallah

deferral of removal and ordered him removed to Jordan. Manaa-Atallah petitioned this court for review, alleging several errors by the Board of Immigration Appeals. We will deny Manaa-Atallah's petition for review.

I.

We write principally for the benefit of the parties and recite only the facts essential to our disposition.

Manaa-Atallah is a native and citizen of Jordan, having been born in the area known as the West Bank in 1959, while that region was part of Jordan. Manaa-Atallah entered the United States in 1978 as a lawful permanent resident on a Jordanian passport. Beginning in 1986, Manaa-Atallah was arrested and convicted for a series of offenses relating to various thefts, which culminated in a 1995 conviction for robbery, robbery of a motor vehicle, theft by unlawful taking, and receiving stolen property. On the basis of these convictions, Manaa-Atallah was sentenced to incarceration of three and a half to fifteen years. That sentence was later vacated by the Pennsylvania court that originally imposed it.[1]

In 1999, the Immigration and Naturalization Service issued Manaa-Atallah a Notice to Appear charging him with removability for the commission of two or more crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii). In 2006, the Department of Homeland Security ("DHS") further charged Manaa-Atallah with

---

[1] The record does not disclose the basis on which Manaa-Atallah's sentence was vacated. His convictions, however, remain of record.

removability for the commission of an aggravated felony in violation of 8 U.S.C. § 1227(a)(2)(A)(iii). The convictions for which Manaa-Atallah was charged with removability were all part of the 1995 conviction for multiple offenses.

During the course of removal proceedings, Manaa-Atallah claimed that he had never been convicted of aggravated felonies or crimes of moral turpitude because he had not been properly sentenced for his 1995 convictions.[2] The Immigration Judge rejected this argument, and found that Manaa-Atallah was eligible for deferral of removal only under the Convention Against Torture ("CAT"). Manaa-Atallah thereafter filed an application to defer his removal along with a personal statement, seeking relief under CAT.

Manaa-Atallah testified in support of his CAT application, addressing his fears about returning to Israel or Jordan. Specifically, Manaa-Atallah claimed that he had sold his land in the West Bank to Israeli settlers in 1980. Manaa-Atallah claimed that after that sale, villagers in his home village threatened his family, and claimed that Hamas placed advertisements in a local newspaper condemning him and his family and placing a *fatwa* against him, directing that he should be killed. Manaa-Atallah further claimed that at least one of his relative's homes had been firebombed and subjected to gunfire.

On May 27, 2008, the IJ issued an oral decision granting Manaa-Atallah deferral of removal to Israel, the West Bank, and Jordan. The IJ restated that Manaa-Atallah was

---

[2] The record does not disclose any information concerning Manaa-Atallah's alleged "improper" sentencing.

3

an aggravated felon, but nevertheless concluded that he would be tortured if he were to return to the West Bank. DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA").

On appeal to the BIA, Manaa-Atallah filed a response to DHS, but did not appeal the IJ's determination that he was an aggravated felon for immigration purposes. On November 28, 2008, the BIA granted DHS' appeal and denied CAT protection to Manaa-Atallah. The BIA found that Manaa-Atallah had provided no evidence that he would be tortured if he were removed to Jordan. Further, relying on the lack of corroborating evidence, the BIA concluded that even if Manaa-Atallah was credible, he had not shown that it was more likely than not that he would be tortured if he were returned to Israel, Jordan, or the West Bank. The BIA also held that the risk of torture by Hamas does not qualify for CAT protection because Israel, not Hamas, is the governing authority in the West Bank. The BIA remanded to the IJ to designate a country of removal.

On remand, Manaa-Atallah sought to have the removal proceedings reopened, claiming that he had additional relevant information. On June 22, 2010, the IJ granted the motion to reopen removal proceedings. Manaa-Atallah introduced various types of evidence purportedly establishing the threat that he would be tortured if he were removed to the West Bank or Jordan. On November 8, 2010, the IJ issued a written decision granting Manaa-Atallah's application for deferral of removal under CAT. The DHS appealed this decision, and on April 27, 2011, the BIA sustained the appeal, finding that the IJ's determination that Manaa-Atallah had demonstrated a clear probability of torture

4

was clearly erroneous.[3] Inasmuch as the IJ had not designated a country of removal, the BIA instructed that Manaa-Atallah should be removed to Jordan. Manaa-Atallah petitioned this court for review.

## II.

On appeal, Manaa-Atallah raises several claims. First, he contends that because the sentence for his 1995 convictions was vacated, those convictions cannot properly serve as the basis for his removability. Second, he contends that the BIA erroneously required him to satisfy an impermissibly high burden of proof to demonstrate his entitlement to relief under CAT. Finally, he contends that the BIA erred in its application of the "clearly erroneous" standard while reviewing the IJ's decision.

## A.

Manaa-Atallah claims that we have jurisdiction over his petition for review pursuant to 8 U.S.C. § 1252. The government, however, contends that we lack proper jurisdiction to review most of Manaa-Atallah's claims. "Before we reach the merits of [Manaa-Atallah's] petition, we must first address the government's argument that we lack jurisdiction over [some] portion[s] of [his] petition." Pareja v. Attorney General, 615 F.3d 180, 186 (3d Cir. 2010).

---

[3] While that appeal was pending before the BIA, on March 24, 2011, Manaa-Atallah filed a *pro se* petition for a writ of habeas corpus in the Eastern District of Pennsylvania. Although counsel did not advise us of this development, that petition was denied as moot on October 21, 2011.

5

Prior to seeking review in this court, an alien must "exhaust[] all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This court has previously recognized that such "issue exhaustion as required by § 1252(d)(1) is a jurisdictional rule." Hoxha v. Holder, 559 F.3d 157, 159 n.3 (3d Cir. 2009). To properly exhaust administrative remedies, an alien must make "some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal." Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005).

The government claims that Manaa-Atallah failed to exhaust his administrative remedies with regard to his claim that his 1995 convictions did not qualify as grounds for removability. We agree.

In his brief to this court, Manaa-Atallah claims that because his sentence for his 1995 convictions was vacated and never properly reinstated, the convictions were not final for immigration purposes, and therefore could not serve as the basis for removability for a conviction for an aggravated felony. Manaa-Atallah raised a similar issue before the IJ, but the IJ characterized his argument as a collateral attack on his criminal convictions and determined that the IJ was precluded from considering such arguments. Manaa-Atallah did not appeal that determination to the BIA.

It is not clear whether Manaa-Atallah's argument is properly characterized as an attack on the legality of his convictions, or a challenge to the removal order against him. In either case, however, we lack jurisdiction to consider the argument. If his claim is an attack on the legality of his convictions, those "convictions are no longer in their own

6

right open to direct or collateral attack. Thus, [Manaa-Atallah] is without recourse." Drakes v. I.N.S., 330 F.3d 600, 604 (3d Cir. 2003). If his claim is a challenge to the removal order, Manaa-Atallah's failure to appeal the IJ's determination that he was an aggravated felon to the BIA renders the claim unexhausted. Such a "due process claim[] . . . could have been argued before the BIA, and [Manaa-Atallah's] failure to do so is thus fatal to our jurisdiction" over such a claim. Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005).

## B.

The government also claims that we lack jurisdiction to consider Manaa-Atallah's claim that the BIA held him to an improperly high standard to establish his entitlement to relief under CAT. We agree.

Manaa-Atallah claims that the BIA: 1) erroneously required corroborating evidence despite the IJ's finding that his testimony was credible; 2) improperly disregarded probative evidence that supported his CAT claim; and 3) as a result of these two errors, cumulatively required Manaa-Atallah to meet a higher standard than required to establish his entitlement to CAT relief.

With certain exceptions, "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). Among the enumerated exceptions to that rule, a court may still undertake "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. §

7

1252(a)(2)(D). To determine whether we properly have jurisdiction to consider Manaa-Atallah's claims regarding the BIA's review of evidence and the standard applied in determining his entitlement to CAT relief, we must determine whether he is raising a constitutional or legal claim.

Manaa-Atallah's first argument is that the BIA erroneously required him to provide evidence which corroborated his testimony when the credible evidence of his testimony was sufficient to meet his burden of proof on CAT eligibility. Manaa-Atallah styles this argument as a claim that the BIA applied an improper legal standard by failing to *de facto* accept his credited testimony as sufficient evidence to support CAT relief.

The regulation on which Manaa-Atallah's argument relies, 8 C.F.R. § 208.16(c)(2), specifies that the "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof [for CAT relief] without corroboration." In interpreting identical language, this Court has noted that "[s]aying that something may be enough is not the same as saying that it is *always* enough; in fact, the most natural reading of the word 'may' in this context is that credible testimony is neither per se sufficient nor per se insufficient." Abdulai v. Ashcroft, 239 F.3d 542, 552 (3d Cir. 2001). In other words, whether uncorroborated credible testimony constitutes sufficient evidence to sustain CAT relief depends on the weight the agency accords to the credible testimony. "[A]rguments such as that an [IJ] or the BIA incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors are not questions of law under § 1252(a)(2)(D)." Jarbough v. Attorney General, 483 F.3d 184, 189 (3d Cir. 2007). We

therefore conclude that we lack jurisdiction to consider Manaa-Atallah's claim that the BIA improperly required him to corroborate his testimony.

We also conclude that we lack jurisdiction to review Manaa-Atallah's claim that the BIA improperly disregarded probative evidence in support of his CAT claim, as arguments pertaining to an alleged failure to consider evidence do not give rise to "questions of law under § 1252(a)(2)(D)." Id. Inasmuch as Manaa-Atallah's arguments concerning the CAT standard do not present a constitutional or legal claim and thus do not fall into the exception permitting our jurisdiction, we may not review those claims.

III.

Having resolved the jurisdictional issues presented by the appeal before us, we now turn to Manaa-Atallah's remaining claim. Manaa-Atallah contends that the BIA improperly applied the "clearly erroneous" standard of review in its review of the IJ's decision. We conclude that the BIA did not err in its application of the clearly erroneous standard.

Because the BIA overturned the IJ's decision, we review the BIA's decision, rather than the IJ's decision. Abdulai, supra, 239 F.3d at 548-49. Although we ordinarily review an agency determination that an individual is not eligible for CAT protection under the "substantial evidence" standard, Sevoian v. Ashcroft, 290 F.3d 166, 170 (3d Cir. 2002), Manaa-Atallah's claim that the BIA misapplied a legal standard is a legal claim, over which we exercise *de novo* review. See, e.g., Pieschacon-Villegas v. Attorney General, 671 F.3d 303, 310 (3d Cir. 2011) (subjecting several issues, including

9

whether the BIA properly applied a legal standard, to *de novo* review as "legal determinations.").

When reviewing an IJ's CAT determination, the BIA is to review "factual findings under a 'clearly erroneous' standard, and [apply] . . . a *de novo* standard of review in determining whether the claimed discrimination or mistreatment would constitute torture under the legal framework." Kaplun v. Attorney General, 602 F.3d 260, 272 (3d Cir. 2010). The BIA can hold a factual finding clearly erroneous "when although there is evidence to support it, the reviewing [Board member or panel] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). The BIA cannot overturn a finding of fact simply because it would have made a different factual determination had it been the factfinder. Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985).

We note, at the outset, that the BIA is entitled to a presumption of regularity in its review. Accordingly, the "burden of proof rests with the party alleging irregularity." Frisby v. U.S. Dep't of Housing and Urban Development, 755 F.2d 1052, 1055 (3d Cir. 1985). Manaa-Atallah has failed to carry his burden of proof.

Manaa-Atallah claims that the BIA erred when it found the following to be clearly erroneous: 1) the IJ's determination that he would be tortured if removed to the West Bank; 2) the IJ's determination that he would be tortured if removed to Israel; and 3) the IJ's determination that he would be tortured if removed to Jordan.

10

In overturning the IJ's finding with regard to the West Bank, the BIA reviewed the evidence that was before the IJ, and concluded that it could not support a finding that Manaa-Atallah faced a clear probability of torture. Specifically, the BIA determined that, in reaching his determination, the IJ had relied on speculation from a lay witness, speculation that two separate organizations would cooperate to enforce a thirty year old fatwa, and a single unauthenticated document. The BIA pointed out that this evidence was unreliable, and additionally considered the fact that Manaa-Atallah had twice applied to return to the West Bank or returned to the West Bank since 1980. Taken together, the BIA was correct that the IJ committed clear error in finding that Manaa-Atallah faced a clear probability of torture in the West Bank.

Manaa-Atallah conceded that he did not fear torture if removed to Israel; accordingly, the BIA committed no error in concluding that he faced no clear probability of torture in Israel. As to Jordan, Manaa-Atallah contends that the IJ did not commit clear error when it concluded that he faced a clear probability of torture on the basis of a law which punished individuals who sold land to Israelis and a newspaper article detailing an arrest for such a sale. We disagree. The law to which Manaa-Atallah refers was repealed in 1968, and Manaa-Atlallah provided no evidence that he would face arrest, nor any evidence that such arrest would constitute torture. Accord Berishaj v. Ashcroft, 378 F.3d 314, 332-333 (3d Cir. 2004), *abrogated on other grounds by Nbaye v. Attorney General,* 666 F.3d 57 (3d Cir. 2011), (something more than "scattered" reports of torture is required to sustain a finding of clear probability of torture).

11

IV.

Because the BIA properly applied the "clearly erroneous" standard of review, and because we lack jurisdiction to consider Manaa-Atallah's other claims, we will deny Manaa-Atallah's petition for review.